THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DEXTER JAMES YOUNG, Defendant-Appellant.

Second District· No. 76-83

Opinion filed March 16, 1977.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted of attempt robbery after a jury trial and

sentenced to serve one to three years in the penitentiary. He appeals, contending that he was not proved guilty beyond a reasonable doubt and that he was deprived of a fair trial because his request for a two-month continuance for the purpose of locating alibi witnesses was denied.

Defendant's contention that the proof was insufficient is essentially based on his claim that the identification was inconclusive and made under inherently suspect circumstances.

The charged attempt occurred on December 31, 1974, in front of the Jewel food store in Aurora. Mrs. Pawlowski testified that she and her husband parked in the Jewel lot at about 7 p.m. on that date. She was walking several feet behind her husband as they approached the front door of the Jewel. As she stepped into the entrance she observed a man standing by the door. She testified that the man was wearing a dark jacket, either brown or black, with white stitching and that he wore light colored pants. He had a "medium Afro." She described the man as being tall and estimated that he was "at least six foot." She merely glanced at him and "didn't really" see his face. She said he didn't have glasses or a hat and that she did not notice any facial hair. She said that as she walked past the man he reached out an arm and grabbed her purse. The man yanked the purse as she held onto it causing her to go down on her knees. In the struggle the strap of the purse broke. She called her husband who had not passed through the second entrance door to the store. Her husband turned and chased the man a short distance, then went into the store and called the police.

Mrs. Pawlowski testified that when the police arrived they took a description of the man from her. Some 20 to 25 minutes later while she was in the squad car a call came over the police radio with a message stating that a suspect fitting the description had been found.

An individual was brought to the scene in a police van. Mrs. Pawlowski said that her husband went to the van to look but she was "too scared" to go in and identified the suspect from the outside of the van through the windshield and through a wire shield. She said that from his jacket and general appearance she "knew that it was him right away." She identified a jacket and a pair of pants exhibited to her as the ones she had seen on the man who took her purse. In court, however, when the witness was asked if she could identify the defendant as being the individual who attempted to take her purse she testified that "[h]e looks familiar, but I couldn't swear to it."

Stanley Pawlowski testified that he noticed a man at the entrance to the Jewel store as he was walking in and that the man looked directly at him and his wife for probably 4 or 5 seconds. The individual was approximately 7 yards away from him. Mr. Pawlowski said he saw his face and noticed that the man had a medium sized "Afro", wore a dark

coat and light pants. Mr. Pawlowski said that he took his eye off the man and as he entered the store he heard his wife yell his name. He turned around and saw that she was down on the ground, then started chasing the black man who was running. He noticed that the man was tall, over 6 foot. He also noticed the man had on light brown "suede-looking shoes" as well as the dark jacket and light pants. After chasing the man for about 20 yards Mr. Pawlowski returned to the store and called the police.

The witness further testified that he identified the defendant in the van from inside the vehicle while looking through a glass covered with a screen which separated the rear compartment. He based his identification on the man's clothes, his hair and the fact that the man was over 6 foot tall. The witness testified in court that the defendant "looked like" the man he had identified in the van. He also testified that the man in the van was the same one he had seen at the Jewel entrance.

Both Mr. & Mrs. Pawlowski testified that there was good lighting both in the store vestibule and in the police van.

From the testimony of various police officers it appeared that the description taken from Mrs. Pawlowski and radioed to other police units was of a "male negro in his early twenties, over six foot, black hair, brown eyes, medium Afro, wearing a dark or black coat, white stitching, cream or white pants and a blue grey shirt." One of the officers testified that after receiving the description he apprehended the defendant on a down town Aurora street. Defendant was wearing a dark navy peacoat and cream colored slacks. The officer told defendant that there had been an attempted robbery at the Jewel and asked defendant if he would accompany the officer to the scene of the purse snatching to be viewed. The defendant agreed to do so if the officer would give him a ride back after the viewing. There was also testimony from the officers that Mrs. Pawlowski identified the defendant in the van, stating "That's the gentleman."

One of the officers also testified that upon a request by the State's attorney he had run the approximate 1½ mile distance from the Jewel to the place where defendant was apprehended and that by half jogging and half walking he was able to cover the distance in 12 minutes and 20 seconds.

The defendant testified that he and three friends went to his parents house at 5:30 on the day of the crime. The defendant's mother corroborated this. Defendant testified that they subsequently drove to Aurora and dropped one of the group off at the laundromat and from there defendant and his two friends went to the Lottery where defendant remained for a period of time and when he went outside was immediately approached by a police officer who told him he was a suspect in a crime.

The defendant argues that Mrs. Pawlowski, the victim, was unable to

identify defendant at trial; that Mr. Pawlowski's testimony as to his in-court identification was less than positive; that the pretrial identification by both the Pawlowskis was unreliable because it was based almost entirely on a description of defendant's clothing; and that the identification in the police van must be viewed with skepticism since it was a one-man "show-up."

■■■ It is clear that a conviction cannot be sustained if the identity of the accused is vague, doubtful or uncertain. (See *People v. Guyton*, 53 Ill. 2d 114, 117 (1972).) However, on the issue of identification the testimony of a single witness is sufficient to convict even though contradicted by the defendant if the witness is credible and is shown to have viewed the defendant "under such circumstances as would permit a positive identification to be made." (*People v. Stringer*, 52 Ill. 2d 564, 569 (1972); *People v. Broadnax*, 23 Ill. App. 3d 68, 72 (1974).) The failure of all eye witnesses to make a positive identification of a defendant does not of itself prevent a conviction. (See *People v. Fleming*, 32 Ill. App. 3d 418, 420 (1975).) The failure of a victim to identify an accused goes to the weight of the evidence and the credibility of the witnesses and will not of itself prevent a conviction. (*People v. Miller*, 31 Ill. App. 3d 115, 118-19 (1975).) The fact that a witness is able to furnish a fairly detailed description of a suspect which, in fact, leads to his apprehension is a significant factor in determining whether there has been a positive identification. (*People v. Porter*, 29 Ill. App. 3d 456, 460 (1975).) An identification based entirely on clothing worn by an accused which clothing is similar to that normally found in the community is generally considered unreliable. (*People v. Moore*, 6 Ill. App. 3d 932, 936 (1972).) However, the physical description of a suspect by body and color together with the description of the clothes he wears may be sufficient evidence of identity even though there is no identification on the basis of facial characteristics. See *People v. Nicks*, 23 Ill. App. 3d 435, 437-38, 441 (1974).

■■ We conclude that the evidence in this case was sufficient to prove that the defendant was guilty beyond a reasonable doubt. Mrs. Pawlowski and her husband viewed the defendant at the scene in adequate lighting, from close proximity and for a sufficient time to insure a reliable identification. Although neither of the Pawlowskis could positively identify the defendant by his facial characteristics, they could each describe him by reference to his high hair style and the clothing he wore. Their description led to the apprehension of the defendant who fit the general description and was wearing the clothing described. The evidence also supported a conclusion that defendant could have been in the vicinity of the crime at the time it occurred.

Both of the Pawlowskis positively identified the defendant when they

viewed him in adequate light in the police van a reasonably short time after the crime. The inability of Mrs. Pawlowski to make a positive in-court identification diminishes the weight of her identification testimony but it does not destroy her credibility or the probative effect of her previous identification. When, as here, the initial identification is based upon physical characteristics and clothing worn and not upon a clear view of the face of an accused, the in-court recognition of a defendant, who may be differently dressed, may reasonably be less positive. The jury may reasonably have concluded that the earlier identification made soon after the incident, however, was probative. And defendant's alibi testimony was not strongly supported.

Defendant additionally contends that he was denied a fair trial because his request for a two-month continuance for the purpose of locating alibi witnesses was denied. He notes that in his motion for a continuance he named two specific witnesses whom he named to the police when he was apprehended; that the motion was denied by an order which stated that no further continuances would be granted and the trial began four days later; that he was in custody on another charge from April 16 until August 18 so that he could not personally locate the witnesses whom an investigator was unable to locate; and that the witnesses did not testify at his trial.

■■ We agree with the State's response that the trial court did not abuse its discretion in denying the continuance under the circumstances. Whether a continuance should be granted rests within the sound discretion of the trial court; and it cannot be said that the discretion has been abused unless prejudice to the defendant has been shown. (*People v. Canaday*, 49 Ill. 2d 416, 427 (1971).) A motion is also considered in the light of the diligence shown by a defendant. (*People v. Henenberg*, 37 Ill. App. 3d 464, 471 (1976).) The defendant was arrested on December 31, 1974, and the information filed the following day. He was released on bond and was not incarcerated until April of 1975 when he was jailed on another charge. The original trial had been set for July of 1975 and no claims were made at that time that defendant had not located the witnesses, one of whom had been his roommate. Further, it was shown that defendant had information at the time of trial that the witnesses were living on a certain street in Aurora. The trial court acted within sound judicial discretion in denying the continuance under these facts.

The judgment is affirmed.

Affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.