THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NORMAN HEFNER, Defendant-Appellant.

Fifth District   No. 77-351

Opinion filed April 6, 1979.

Michael J. Rosborough and Jeffrey M. Plesko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Howard L. Hood, State's Attorney, of Murphysboro (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Following a jury trial in the Circuit Court of Jackson County, defendant was convicted of forgery. Defendant appeals from his conviction raising issues involving the identification of an accused by a single witness.

On March 11, 1975, a checkbook was taken from a purse belonging to Terry Irby along with identification and credit cards. Later that day, a black male entered a Sears store and proceeded to write two checks in the name of Harry Irby who had a joint account with his wife. The first check in the amount of $242.50 was cashed between 4 and 5 p.m. by Nancy White, a Sears employee and supervisor of the cashier's department. Approximately one week after the incident, Ms. White gave a description of the man to a security officer at Sears. She described him as approximately six feet tall, with an afro, a possible goatee and a muscular build. A few days later, she was shown a photo array, of which two of the six photographs were of defendant, but she could not make an identification. At trial, Ms. White was unable to say whether defendant was the man who had signed the check.

Mary James, a cashier at Sears, saw Ms. White cash the first check. Later that evening, the man returned and wrote a second check for $255. Ms. James cashed the check after it was approved by Raymond Morris, a Sears staff man. She was later able to identify one of the two pictures of defendant in the photo array; however, after her husband indicated that the display included a second photograph of the same person, Ms. James was then able to recognize that it was the defendant as well. At trial, she testified that defendant was the person who had delivered the checks to Ms. White and herself. She further testified that the area surrounding the Sears' cashier's window was illuminated by flourescent lights; that defendant was two to three feet away from her when the checks were cashed; that she had an opportunity to view defendant under the store's lighting; that she had never seen him before the check cashing incident; and that defendant then had a mustache, a little goatee and less facial hair than he had at trial.

During an extensive cross-examination, it was revealed that at the preliminary hearing, two years prior to trial, Ms. James had stated that she had seen defendant in Carbondale prior to the incident. Furthermore, at

the hearing she had described the man as being a Negro male, approximately 6 feet in height, slim in build, and having possibly a goatee. Her prior testimony also indicated that she did not believe that defendant had a mustache at the time of the check cashing incident. In commenting upon her prior testimony at trial, she stated that she thought defendant had a mustache but was not certain because she had not been staring at him and was unable to observe every detail. When asked whether she was sure that defendant was the person who had presented the two checks, Ms. James replied, "I am positive."

Robert Hopkins, an investigator for the SIU security police, testified that Raymond Morris, the Sears employee who had approved the second check, was unable to identify positively defendant from the photo array. Mr. Morris, however, upon viewing the photographs, told Hopkins that the person who had signed the second check resembled defendant. Mr. Morris did not testify at trial having apparently moved out of the jurisdiction.

At the time of defendant's arrest three weeks after the incident at Sears, defendant had a slight but noticeable full beard and mustache. Defendant is approximately 6 feet tall and weighed 170 pounds at the time of his booking at the county jail.

■■ ■ Defendant first argues that he was not proved guilty beyond a reasonable doubt because his conviction was based solely upon an identification which was doubtful, vague and uncertain. The law is well settled that the testimony of a single identification witness, if positive and credible, is sufficient to support a conviction. (*People v. Harrison*, 57 Ill. App. 3d 9, 372 N.E.2d 915 (1st Dist. 1978).) The fact that not all eye-witnesses to the criminal offense can make a positive identification of the accused does not of itself prevent a conviction. (*People v. Young*, 46 Ill. App. 3d 798, 361 N.E.2d 301 (2d Dist. 1977); *People v. Fleming*, 32 Ill. App. 3d 418, 336 N.E.2d 244 (5th Dist. 1975).) The failure of a witness to identify an accused merely goes to the weight of the evidence and the credibility of the witness. *People v. Young.*

■■ ■ A precisely accurate description by the identifying witness of the facial characteristics of defendant is not necessary where the witness is able to make a positive identification under conditions adequate for observation. (See *People v. Harrison*; *People v. Moore*, 50 Ill. App. 3d 952, 365 N.E.2d 1356 (2d Dist. 1977); *People v. Brown*, 50 Ill. App. 3d 348, 365 N.E.2d 907 (1st Dist. 1977).) Furthermore, minor discrepancies in the testimony of a witness at the preliminary hearing and at trial, such as whether or not defendant had a slight mustache at the time of the offense, will not render an identification of an accused invalid. (*People v. Guyton*, 53 Ill. 2d 114, 290 N.E.2d 209 (1972); *People v. Harrison*.) The possible inability of a witness to describe in detail the facial characteristics and

clothing of the accused and the presence of possible contradictory testimony are factors which the trier of fact must consider in determining the credibility of an identification witness. *People v. Harrison.*

In the present case, Ms. James had the opportunity to view defendant at the Sears store on two separate occasions, at close range and under bright fluorescent lights. While she was not certain whether defendant had a mustache at the time of the incident, she was otherwise able to furnish a clear and accurate description of the accused and identify him both in a photograph array and at trial. The two other witnesses to the cashing of the checks, though unable to make a positive identification of defendant, were nevertheless able to corroborate much of Ms. James' testimony. On the basis of the above testimony, we believe that there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt.

Defendant relies on *People v. Kincy*, 72 Ill. App. 2d 419, 219 N.E.2d 662 (1st Dist. 1966), *People v. Marshall*, 74 Ill. App. 2d 483, 221 N.E.2d 133 (1st Dist. 1966), and *People v. Martin*, 95 Ill. App. 2d 457, 238 N.E.2d 205 (1st Dist. 1968), for the proposition that the inability of a sole identifying witness to remember whether an accused had a mustache renders an identification vague, doubtful and uncertain. While these cases appear to support defendant's position, they are contrary to the long line of cases which have held that discrepancies as to facial hair go to the weight of the identification testimony and are to be evaluated by the trier of fact. (See *People v. Mendoza*, 62 Ill. App. 3d 609, 378 N.E.2d 1318 (1st Dist. 1978), which rejects the *Kincy* rationale and which contains a list of the numerous cases following what we believe is the majority and better position.)

In any event, we note that at the time of the incident, defendant had, at most, a slight beard and mustache, which Ms. James might not have noticed in the two encounters with defendant. As stated in *People v. Ervine*, 64 Ill. App. 2d 82, 87, 212 N.E.2d 346, 349 (1st Dist. 1965):

"[I]t is contrary to human experience to make an identification by noticing first the separate features, hair, or clothes of a person, and then, somehow, running off a total to determine recognition or non-recognition. Ordinarily all features are viewed at once and the recognition made instantaneously or not at all. This is one of the reasons why minor discrepancies in identification do not require reversal."

Defendant next argues that the trial court erred in refusing to give certain non-IPI instructions to the jury on the issue of identification. Defendant tendered a lengthy 2½-page identification instruction (defendant's instruction No. 3) adopted in *United States v. Telfaire*, 469 F.2d 552 (D.C. Cir. 1972), and an instruction (defendant's instruction No.

4) based on *United States v. Barber*, 442 F.2d 517 (3d Cir. 1971). The two instructions emphasize the dangers of faulty identification of an accused in a criminal case. In refusing these instructions, the trial court stated that defendant's instruction No. 3 tended to be argumentative and unduly emphasized the reasonable doubt standard in violation of the Supreme Court Rules, and that defendant's instruction No. 4 had "the blessing of being shorter * * * but would not be proper."

■■ The decision whether to give a non-IPI instruction is within the sound discretion of the trial court (*People v. Hines*, 28 Ill. App. 3d 976, 329 N.E.2d 903 (5th Dist. 1975)), which, in the present case, was not abused. Supreme Court Rule 451(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 451(a)) provides that non-IPI instructions, when given, "should be simple, brief, impartial, and free from argument." In addition, IPI Criminal No. 3.15 recommends that no instruction be given on identification and concludes that this subject is adequately covered by IPI Criminal No. 1.02 ("Jury is Sole Judge of Credibility of Witnesses").

In *People v. White*, 58 Ill. App. 3d 226, 374 N.E.2d 250 (4th Dist. 1978), and *People v. Attaway*, 41 Ill. App. 3d 837, 354 N.E.2d 448 (1st Dist. 1976), which considered arguments almost identical to the one presented by the instant defendant, it was held that the *Telfaire* instruction did not comport with the requirements of Rule 451(a) and was properly refused when the court, as in the present case, submitted IPI Criminal No. 1.02 and IPI Criminal No. 2.03 ("Presumption of Innocence—Reasonable Doubt—Burden of Proof Generally") to the jury. We agree with IPI Criminal No. 3.15 and *People v. White* that discussion of the factors surrounding the circumstances of an identification are better left to closing argument than to instructions. Accordingly, we hold that the trial court did not err in refusing defendant's instructions Nos. 3 and 4.

For the reasons stated, the judgment of conviction of the Circuit Court of Jackson County is affirmed.

Affirmed.

G. MORAN, P. J., and JONES, J., concur.