THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AL SMITH DANDRIDGE, JR., Defendant-Appellant.

Fifth District   No. 80-272

Opinion filed August 3, 1981.

John H. Reid, of State Appellate Defender's Office, of Mt. Vernon (Shelvin Singer, of IIT-Chicago-Kent College of Law, and Kevin Colombo, Jeffrey Orloff, and Paul Wieck, law students, of counsel), for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WELCH delivered the opinion of the court:

Al Smith Dandridge, Jr., was charged with burglary, criminal trespass to a motor vehicle, and attempted theft for the events of February 27, 1979. He was tried by a jury on May 12 and 13, 1980, and found guilty on all three counts. He was sentenced to probation for three years with three weekends in the county jail and fined $200. He appeals from the conviction and denial of a new trial. We affirm the ,convictions for burglary and attempted theft, but reverse the conviction for criminal trespass.

On February 27, 1979, shortly after noon, Clifford Dietz parked his Dodge Dart in front of the Carbondale Post Office and went in to get his company mail. He came back a minute or two later to find a stranger in his car. Dietz spoke to the man who said something about being in the wrong car and walked away. Dietz watched him get into an old yellow

van in the parking lot near the post office. Dietz discovered that his citizen's band radio was partly disconnected and lying on the floor of the car. He got in his car and followed the yellow van until he lost sight of it in a mall parking area. Dietz went back to his office and called the police to report the incident. The police broadcast a description of the van and person which Dietz gave them. Melissa Bolen, an animal patrol warden, heard the broadcast in her truck and spotted a van which fit the description. She radioed the location and talked with the driver of the van, Al Dandridge, until Terry Mick, a Carbondale Police Officer, arrived and arrested him. At the time of the arrest Dandridge was wearing a long green coat that looked like an army trench coat, a green knit cap, a yellow sweatshirt with a reddish circular insignia on it, and sunglasses. Officer Mick took Dandridge to the police station to wait for Dietz to see if he could make an identification. Dietz got to the police station at about 1 p.m.—less than an hour after the incident at his car. When Dietz first saw Dandridge from about 20 feet away, Dandridge was wearing the coat and hat he wore when he was arrested. Dietz identified him immediately but commented on the lack of sunglasses. Officer Mick had Dandridge put on the glasses he was wearing when arrested, and Dietz identified the sunglasses as well. Dietz did not hesitate in his identification and volunteered it as soon as he saw Dandridge. No formal lineup was conducted and no photo array was shown to Dietz. His identification of Dandridge was based on the one-to-one confrontation in the police station. Dandridge was walking down the hall of the station next to Officer Mick, not in handcuffs, when Dietz saw and identified him.

After identifying Dandridge at the police station, Dietz was taken by Sergeant Maurizio of the Carbondale Police Department to where Dandridge's van was parked. As soon as they turned a corner, about half a block from the van, Dietz pointed it out and identified the van as the one he had followed earlier.

Dandridge was charged by an amended information with burglary, criminal trespass to a motor vehicle, and attempted theft of the c.b. radio. At a preliminary hearing on March 26, 1979, Officer Mick testified that he heard a police radio dispatch describing the van as "an early sixties model, Ford van, yellow, in a beatup condition, with a right rear door that would not close," and the suspect as a "negro male, tall, slender build with a green coat."

On February 7, 1980, a hearing was had on the defendant's motion to suppress identification. Clifford Dietz, the complainant, testified that he had described the man who got out of his car to the police as "with a long trench coat on and green outfit looking and a sock cap, and he had on dark-rimmed glasses," sunglasses. He testified further that the man was black, wore glasses, had a moustache, and "somewhat a beard." Dietz

testified that he had gotten a good look, full in the face, at the man as he got out of the car and had talked with him. He had also watched the man walk away across the parking lot for a few minutes.

Officer Mick testified at the hearing on the motion to suppress identification that the description he heard over the radio was of "a negro male wearing a long green coat resembling a military trench coat or something of that nature, stocking cap, sunglasses, a yellow sweatshirt with some kind of emblem on it."

At the jury trial Dietz identified Dandridge as the man he saw getting out of Dietz' car. Angele Settles testified for the defense that she, Dandridge, and Alan Hicks were in Dandridge's van on February 27, 1979. They drove to the post office so that Hicks could buy some stamps. She and Dandridge waited in the van, parked in the service driveway to the side of the post office, while Hicks went in. Hicks returned and they drove him home and then Dandridge dropped Settles off at her home. She did not recall what either Hicks or Dandridge was wearing that day, but remembered that Hicks had a beard. Dandridge also testified. He verified what Settles had testified to, and added that Hicks owned a green coat like he did, although he could not remember what Hicks was wearing on February 27.

Dandridge was convicted of burglary, criminal trespass to a motor vehicle, and attempted theft of the c.b. radio.

Defense counsel filed a written motion for a new trial which was set for argument on June 12, 1980, the same day as the sentencing hearing. In the presentence investigation report prepared by a probation officer for the court, Dandridge mentioned that he was dissatisfied with his attorney's performance at the trial. He was specifically concerned that the attorney failed to introduce evidence that when the police arrested Dandridge they found Angele Settles' purse in the van. Dandridge felt that the omission of the evidence corroborating the fact that she was in his van when she said she was amounted to incompetence of counsel. Michael Baird, the assistant public defender who represented Dandridge, pointed the matter out to the judge but was in a conflicting situation himself. The court did not ask Dandridge whether he wished another attorney for the post-trial motions, and Baird did not ask to be removed from the case. The court treated the oral representations as an additional point in the motion for a new trial and denied the motions.

Dandridge was sentenced to a fine of $200 and probation for a period of three years, with three weekends in the county jail.

■■ The defendant maintains that the identification procedure used by the police in arranging a "show up" with only one person being shown to Clifford Dietz was impermissible, highly suggestive, and conducive to mistaken identification. It is true that showups of a single defendant in the

custody of the police for identification by witnesses are not favored and are even condemned. However, under certain circumstances such identification procedures can be justified. (*People v. Manion.* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The key question is: under the totality of the circumstances, was the identification reliable? The factors to be considered in assessing the totality of the circumstances are:

> "* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (*People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, 1317, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.)

In the case at bar, Dietz had an opportunity to view the man emerging from his car face to face at a distance of about six feet, for a few seconds in bright daylight. Dietz was definitely paying attention to the stranger in his car. He gave the police a description of the man's clothing, build, race, sunglasses, and automobile. He did not include the fact of facial hair, but as we have observed before:

> " '[I]t is contrary to human experience to make an identification by noticing first the separate features, hair, or clothes of a person, and then, somehow, running off a total to determine recognition or non-recognition. Ordinarily all features are viewed at once and the recognition made instantaneously or not at all. This is one of the reasons why minor discrepancies in identification do not require reversal.' " *People v. Hefner* (1979), 70 Ill. App. 3d 693, 696, 388 N.E.2d 1059, 1062.

■■ At the police station Dietz was certain of the identification as soon as he saw Dandridge. It was an immediate positive identification. He was similarly sure of the identification of Dandridge's van as soon as he saw it later on the street. Less than an hour had elapsed from the incident at Dietz' car to his viewing of Dandridge in the police station. We hold that under the totality of the circumstances the identification was reliable and therefore admissible.

■■ The defendant alleges that the court committed reversible error by allowing the prosecutor to use inadmissible hearsay during his closing argument as evidence. The hearsay evidence was the testimony of two city employees who originally detained Dandridge in response to a police radio dispatch. They testified to their recollection of the description of a van and person which they heard over the police radio. Defense counsel did not object on the basis of hearsay or any other basis. When the prosecutor summarized the testimony during his final argument he

recalled the testimony of the two employees. Defense counsel did object at that point, on the basis of hearsay, maintaining that the testimony had been admitted on a limited basis solely to explain why the employees detained Dandridge. The objection was overruled and rightly so. If counsel had made a timely objection at the time of the testimony the court could have ruled that the evidence would be accepted for the limited purpose. In that case it would have been improper for the prosecutor to treat the testimony as tending to prove the truth of the matter asserted—the identification of the defendant. However, by not objecting to the hearsay testimony when it was originally offered the defense waived the point and the testimony was received with no limitations.

Defendant further asserts that since his motion for a new trial was based in part upon a charge of incompetence of his appointed counsel at trial it was error to allow the same lawyer to argue the motion. The defendant told the probation officer who prepared the presentence investigation report for the court that he was dissatisfied with his representation at trial. He felt his lawyer was incompetent because he had failed to introduce evidence that the police found Angele Settles' purse in Dandridge's van when Dandridge was arrested. At the hearing on the attorney's written motion for a new trial, defense counsel called the point to the court's attention. He explained what his understanding of the defendant's dissatisfaction was. Defense counsel did not ask to withdraw from the case and the court did not inquire whether the defendant wanted a new lawyer to argue the post-trial motion. Counsel recognized his inability to represent the defendant on the claim when he said something should be said of record "* * * in regard to a ground that Mr. Dandridge apparently wishes to raise on appeal that is something that I would not be in a position to raise. It seems to be incompetence of counsel."

■■ The attorney explained how the discovery of Settles' purse in the van could tend to corroborate her testimony. He brought this matter to the court's attention so that it was considered on the merits. (*People v. Adams* (1979), 74 Ill. App. 3d 727, 393 N.E.2d 658.) The better practice would have been for the court to have inquired, as in *People v. Bennett* (1980), 90 Ill. App. 3d 64, 412 N.E.2d 1001, whether the defendant wanted different counsel and whether the lawyer felt he could continue to represent the defendant in spite of the charge of incompetence. In this case, however, the error was harmless. The court did consider the missing evidence in the motion for new trial and concluded that it would not have been enough to change the outcome of the trial. We agree. He therefore denied the motion for a new trial. The record indicates that in spite of the defendant's lack of enthusiasm over his trial performance, counsel went on to argue vigorously and successfully against the imposition of a prison sentence for

the burglary conviction. The defendant was therefore not prejudiced by retention of the same attorney.

The defendant maintains that he received multiple convictions for the same acts, as prohibited by the Illinois Supreme Court. "Prejudice results to the defendant * * * in those instances where more than one offense is carved from the same physical act." (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Dandridge was convicted of burglary of a motor vehicle, criminal trespass to a motor vehicle, and attempted theft of a citizen's band radio.

As applicable to this case, burglary is defined thus: "A person commits burglary when without authority he knowingly enters * * * a * * * motor vehicle * * * with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1979, ch. 38, par. 19—1(a).) The key elements are (1) knowing, (2) unauthorized entry, and (3) intent to commit a theft.

■■ The definition of criminal trespass to vehicles is as follows: "Whoever knowingly and without authority enters any vehicle * * * of another without consent commits a Class A misdemeanor." (Ill. Rev. Stat. 1979, ch. 38, par. 21—2.) By definition criminal trespass to a vehicle is a lesser included offense of burglary of a vehicle. Both convictions cannot stand.

■■ The same cannot be said of the convictions of burglary and of attempted theft. The "physical act" upon which defendant's burglary conviction was based was the entry of Dietz' car with the intent to commit a felony or theft therein. The attempted theft was founded upon his completion of a substantial step toward the theft of the radio, namely the partial disconnection of its wires. Even though these acts are closely related, and though the partial disconnection of the radio provided some evidence of defendant's intent to commit a theft, his conviction for burglary stems from a different act than that which supported his conviction of attempt theft. These two convictions are not barred by the rule of *King.*

We reverse the conviction for criminal trespass to a motor vehicle and affirm the convictions for burglary and attempted theft.

Reversed in part; affirmed in part.

KASSERMAN, P. J., and KARNS, J., concur.