THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KEITH R. SCHUMANN, Defendant-Appellant.

Second District   No. 83—0050

Opinion filed December 27, 1983.

John Panegasser, of Elmhurst, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Following a bench trial, defendant, Keith R. Schumann, was convicted of driving under the influence of alcohol (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(a)) and failure to reduce speed to avoid an acci-

dent (Ill. Rev. Stat. 1981, ch. 95½, par. 11—601(a)). He appeals from his convictions and fines of $350 and $50 respectively, with costs. He contends that he was not proved guilty of either offense beyond a reasonable doubt, that the court erred in allowing a blood sample and the result of the blood analysis in evidence and that various rulings of the trial judge deprived him of a fair trial or the right to have the charges dismissed.

I

a. Defendant challenges the admission of the blood sample and the blood analysis on the basis of various regulations of the Illinois Department of Public Health (Department) (see Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2). The regulations of the Department, entitled Standards and Procedures for Blood and/or Other Drug Testing by Breath, Blood and Urine Analysis (1982), were admitted into evidence upon the court taking judicial notice of them.

He first argues noncompliance with Department Rule 11.01(a) which states that the "[b]lood sample shall be collected in the presence of the arresting officer or other representative of the arresting officer's agency who can authenticate the sample." The operative facts in this connection are that defendant was taken from the scene of the occurrence by ambulance to Hinsdale Sanitarium and Hospital where he received treatment in the emergency room. Officer Stadwiser, upon his observation of defendant, believed him to be under the influence of alcohol and at his request defendant consented to a blood test. The officer then went into the X-ray room where defendant was to undergo the blood test; he saw no one else in the room. He witnessed defendant being taken to the X-ray room and met with the woman, identified as Vicki Linjuco, who was to withdraw the blood sample. The officer testified that he remained outside the room, and only an X-ray technician came in and out of the room periodically. Ms. Linjuco handed him two vials which appeared to contain blood and had labels on them. She testified that she withdrew two vials of blood from defendant's arm after checking his patient arm band for proper identification. She further testified that Officer Stadwiser stood next to her while she withdrew blood from defendant, and that she then gave him the two vials of blood, which were identical.

There was conflicting evidence as to the presence of the officer who testified that he was standing just outside the room, while Vicki Linjuco testified that the officer was next to her while she withdrew the blood. We conclude, however, that under either version of the facts there has been compliance with the underlying purpose of

the rule, to insure that the blood sample is authenticated as taken from the defendant by providing that it shall be taken in the presence of the officer who can testify to the identity of the defendant. The testimony assures that the defendant was the one from whom the blood was taken, since there were no other persons, other than hospital personnel, in the room during the procedure.

The defendant argues that the State failed to prove the identity of defendant since Vicki Linjuco could not identify him in court. She could not identify him because, she said, he was covered with blankets and X-ray equipment at the time of the taking of the blood sample. She did, however, identify him according to the name on his hospital arm band prior to taking the blood. In addition, Officer Stadwiser properly identified the defendant in court.

■ b. Defendant also challenges Rule 11.01(d)(4) which states that individual containers of blood "shall be appropriately and securely labeled to provide the following information: name of accused, date and time of collection, collecting attendant, authorizing officer's signature and agency identification, type of anticoagulant/preservative." As to the signature requirement, defendant argues that the officer's name was printed in his own handwriting and that this does not constitute his signature. We do not agree. A signature is not required to be written in cursive handwriting. See *A. T. Willett Co. v. Industrial Com.* (1919), 287 Ill. 487, 493, in which the court noted that a signature is the act of putting down a man's name at the end of an instrument to attest its validity and that words traced with a pen, stamped, printed, engraved or made legible by any other device, including a typewriter, are written.

■ Defendant also asserts that the type of anticoagulant/preservative was not indicated on the labels. The evidence shows that the name "disodium[1] edetate sodium fluoride" is clearly written on the label. As defendant argues, no State's witness testified as to what the agent is or what it does. Officer Stadwiser, however, did refer to the substance as an anticoagulant; he acquired the name of the agent by asking the person who withdrew the blood. In addition we take judicial notice that disodium edetate sodium fluoride is an anticoagulant/preservative.[2]

■ c. In general, the Department regulations provide that "[t]he

---

[1]At trial, disodium was erroneously referred to as pisodium.

[2]Disodium edetate is listed as an anticoagulant in The Merck Index, An Encyclopedia of Chemicals and Drugs 449 (9th ed. 1976), and sodium fluoride is a preservative (Winek & Paul, *Effect of Short-Term Storage Conditions on Alcohol Concentrations in Blood from Living Human Subjects*, 29 Clinical Chemistry 1959 (1983)).

identity and integrity of the sample shall be maintained through collection to analysis and reporting." (Rule 11.01(d)(4).) Defendant contends that the blood samples were not taken directly to the Department as required by Rule 11.01(d)(5). He relies on the fact that the blood was withdrawn at approximately 3 a.m. on May 2, 1982, and that it was delivered to the Department at approximately 11:30 a.m. on May 3, 1982, a time span of more than 32 hours. It is relevant to note that the blood was withdrawn on a Sunday morning. It is not unreasonable that the officers would wait until Monday morning, a normal business day, to deliver the sample to the laboratory in Chicago. Further, there is no evidence that the samples may have been tampered with or contaminated. The defendant also fails to state how the 32-hour delay has prejudiced him in any way. We conclude that the purpose of the rule has been adequately complied with.

*People v. Leffew* (1975), 33 Ill. App. 3d 700, cited by defendant in support of his contention that the Department regulations must be strictly complied with, does not require a different conclusion. In *Leffew*, the doctor drawing the blood sample did not follow the Department rule prohibiting the use of alcohol to disinfect the area of the injection. The results of the blood test were excluded for the reason that the presence of the alcohol could easily produce inaccurate test results. In our view, none of the particular objections of this defendant can be said to produce inaccurate test results.

d. Defendant next argues that Rule 11.01(b) was violated since the blood was not drawn "by a physician licensed to practice medicine, by a registered nurse, or by a trained phlebotomist." The rule implements the provision in the Illinois Vehicle Code which provides that "only a physician authorized to practice medicine, a registered nurse or other qualified person approved by the Department of Public Health may withdraw blood" to determine its alcohol content. Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(a)(2).

██ Defendant contends that because Vicki Linjuco is called a medical technologist and not a phlebotomist, she was not qualified to withdraw defendant's blood. She testified that while a phlebotomist is trained to draw blood but not analyze it, a medical technologist is trained to draw and analyze blood. She further testified that her work consists of drawing blood and then analyzing it; she is registered with the American Society of Clinical Pathologists; she does work in the area of phlebotomy on the night shift when no phlebotomist is on duty; and that she is then a phlebotomist "in a way." The evidence showed that Vicki Linjuco was clearly qualified to withdraw defendant's blood. Merely because she can perform more tasks than a phle-

botomist and is not called a phlebotomist is not sufficient criteria to find her unqualified to withdraw blood.

■ e. Defendant also contests Department regulations 11.01(d)(2) and (3). Both sections require that two containers or tubes be used to collect the blood sample. Defendant asserts that both containers of blood must be introduced at trial and that the State's failure to produce a second vial was error. However, neither the statute nor the regulations require both vials to be produced at trial. Rule 11.01(d)(6) provides that the testing laboratory shall utilize one container for the Department analysis and shall retain the second container for at least one year. There was testimony that the second vial was kept in the laboratory refrigerator in the event the accused wished to have an independent analysis performed. The production of the second identical vial with the identical blood at trial would serve no purpose. Defendant attempts to justify his contention by reference to the best evidence rule. The rule, however, has no application since it cannot be said that introducing two identical vials rather than one amounts to the "best evidence."

## II

■ Defendant also contends that the chain of evidence regarding the blood samples was broken and consequently the blood and its analysis should have been excluded from evidence. He suggests that the chain of evidence was broken because Officer Carlson did not produce the receipt for the vials which he obtained when he delivered them to the Department. The officer testified that he delivered the vials of blood from the Oak Brook police department to the Department of Public Health in Chicago, took the samples to the toxicology department and was issued a receipt by the person to whom he gave the vials, Gail Rosenquist. There also was testimony that Gail Rosenquist is employed by the Department of Public Health in Chicago and that she gave one vial for analysis to a co-worker, Veronica Rotterman, and placed the other vial in the refrigerator, as previously noted, where it remained at the time of trial. Although the receipt was not present in court, it was testified that it was in the evidence file at the Oak Brook police department. There was also testimony from Gail Rosenquist that she received the vials from Officer Carlson on May 3, 1982. There was no evidence to contradict these links in the chain of evidence. The vials clearly were passed by Vicki Linjuco to Officer Stadwiser to the police department evidence refrigerator to Officer Carlson to Gail Rosenquist. We find no break in the chain of evidence.

## III

Defendant contends that the State failed to prove him guilty beyond a reasonable doubt of each of the offenses charged.

The incident from which the charges arose occurred on May 2, 1982, at 2:05 a.m. Defendant was driving eastbound on Roosevelt Road in Oak Brook while another vehicle driven by Mary Mulvihill was also traveling eastbound at approximately 45 miles per hour in a 50-mile-per-hour zone in the center lane of Roosevelt Road. She testified that, immediately prior to the accident, the headlights and taillights of her car were on. She saw no other vehicles on the road either behind her or in front of her. She heard a loud bang from the rear of her car and the trunk flew up. She did not see a car hit her but saw a car go into a ditch. Shortly after the accident Officer Paul Stadwiser of the Oak Brook police department arrived at the scene. He testified that two vehicles had been in an accident; the car driven by Mrs. Mulvihill had extensive rear-end damage and the car driven by defendant, found in a ditch, had extensive front-end damage. The officer found the defendant behind the wheel of his car, with signs of injury to his head and face. The windshield was broken, and it appeared that defendant had hit the windshield, as it was bent outward. The defendant told the officer that he was the driver of the car. The officer noted that defendant's speech was slurred, a strong odor of alcohol emanated from his mouth, and he had difficulty comprehending what had transpired. In the officer's opinion the defendant was under the influence of alcohol.

Defendant was then taken by ambulance to Hinsdale Sanitarium and Hospital where he received treatment in the emergency room. Officer Stadwiser, upon continued observation of defendant, still believed him to be under the influence of alcohol.

The defendant, the sole defense witness, testified that he had no recollection of the accident on May 2, 1982. The last thing he remembered was being at work during the afternoon of May 1 and next recalled being in the hospital for his injuries.

Section 11—501 of the Illinois Vehicle Code provides, *inter alia*, that a person shall not drive while under the influence of alcohol. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(a)(2).) Under section 11—501.2, evidence of the concentration of alcohol in the person's blood, as determined by a chemical analysis, is admissible (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(a)), and gives rise to a presumption that the person was under the influence of alcohol if the alcohol concentration was 0.10 or more (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(b)(3)). After this presumption of intoxication arises, defendant has the bur-

den of producing evidence in his favor sufficient to rebut the presumption. *People v. Hester* (1980), 88 Ill. App. 3d 391, 393.

■ The blood analysis reveals that the concentration of alcohol in defendant's blood was 0.183, above the level of presumptive intoxication. This evidence is unrefuted, and is thereby sufficient to prove defendant's guilt.

We would agree, however, with the defendant's argument that if the blood analysis had not been properly admitted, as we have concluded that it was, there would have been insufficient other evidence to find the defendant guilty beyond a reasonable doubt of driving under the influence of alcohol. This is so because the evidence of physical trauma to the defendant arising from the accident could have accounted for the symptoms which the officer described and no other tests of sobriety were administered. See, *e.g., People v. Thomas* (1975), 34 Ill. App. 3d 578, 580-81.

■ We also conclude that the evidence proved defendant's guilt of failing to decrease speed to avoid the collision, beyond a reasonable doubt. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—601.) Necessary proof is that the defendant drove carelessly and failed to reduce speed to avoid colliding with a person or vehicle. *In re Vitale* (1978), 71 Ill. 2d 229, 238, *vacated and remanded on different grounds* (1980), 447 U.S. 410, 65 L. Ed. 2d, 228, 100 S. Ct. 2260; *People v. Brant* (1980), 82 Ill. App. 3d 847, 851.

The fact that, as defendant argues, the State failed to present any evidence as to the speed of his vehicle does not create a reasonable doubt. The evidence establishes that the speed limit was 50 miles per hour, that Mrs. Mulvihill was traveling at 45 miles per hour, that she saw no vehicles either behind her or in front of her and that while driving in the center lane she was struck from the rear. There was also evidence that she saw a car go into the ditch and defendant's car was found there. From these facts the trier of fact could properly infer that defendant was driving carelessly and that he failed to reduce his speed to avoid colliding with the Mulvihill vehicle.

## IV

We have also concluded that defendant's claim of other trial errors is not meritorious.

a. Defendant first contends that the trial court abused its discretion in allowing a continuance to the State midway through trial. Pursuant to section 114—4(c)(2) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114—4(c)(2)), the trial court originally denied the State's motion for a continuance because the

stipulation had purportedly been entered into regarding the alleged testimony of a State's witness who was to testify to the blood analysis and the blood alcohol content. The record is devoid of any written stipulation or any oral statement concerning the exact subject matter of the purported stipulation. As the trial progressed the court realized that the parties were not in agreement on the scope of the oral stipulation and on that basis the trial court continued the trial to a date when the witness would be available.

■■■ The granting or denial of a continuance to procure a witness is a matter within the sound discretion of the trial court and depends on the particular facts and circumstances surrounding the request. (*People v. Koris* (1982), 107 Ill. App. 3d 821, 828.) The determination to grant or deny a continuance will not be reversed unless there has been an abuse of discretion. (*People v. Sullivan* (1981), 95 Ill. App. 3d 571, 573.) Prejudice to the defendant must be shown before it can be said that the discretion has been abused. (*People v. Young* (1977), 46 Ill. App. 3d 798, 802.) We conclude that defendant has shown no prejudice by the granting of the continuance. Accordingly, the trial court did not abuse its discretion.

b. Nor was it error to permit Veronica Rotterman to testify as to the blood analysis even though she had not been previously listed as a witness. The witness who actually made the analysis was Ms. Rotterman rather than Gail Rosenquist, whom had been listed and for whose testimony the trial had been continued. It appears from defense counsel's statement in oral argument that he actually knew that Ms. Rotterman had done the analysis. In addition the court recessed the trial to allow defense counsel to interview Ms. Rotterman.

■■■ Allowing an unlisted witness to testify is within the discretion of the trial court, and the exercise of that discretion will not be disturbed absent a showing of resulting surprise or prejudice; the burden of showing surprise or prejudice is on the defendant. (*People v. Steel* (1972), 52 Ill. 2d 442, 450.) The defendant has not sustained that burden on this record.

■■■ c. Finally, we conclude that the court did not err in permitting Officer Stadwiser to be recalled to testify to his writing on the vial. The determination whether to reopen proofs is left to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. (*Harbeck v. Holland* (1980), 81 Ill. App. 3d 250, 254.) At the time the officer was recalled the State was still presenting its case. Especially in light of the confusion regarding the purported stipulation and whether it encompassed the vial of blood or merely the testimony of the analysis results, we find no abuse of dis-

cretion in permitting him to formally identify the vial.

The judgment of the circuit court of Du Page County is therefore affirmed.

*Affirmed.*

NASH and VAN DEUSEN, JJ., concur.