**Delores M. THOMAS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Delores M. THOMAS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Nos. 88–202, 88–203.**

Supreme Court of Wyoming.

Dec. 21, 1989.

---

Leonard Munker, State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and S. Gregory Thomas (argued), Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Maryrobin Burney (argued), Student Extern, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellant Delores Thomas was convicted after a jury trial of transferring a forged prescription for Percodan, a Schedule II controlled substance. Thomas has appealed the conviction, presenting the following issue:

"Did the court below err in refusing to instruct the jury upon request as to the dangers of eyewitness testimony and the possibility of error (1) where the sole issue for the jury under the defendant's theory of the case was the accuracy of that identification; (2) where the testimony of the sole witness to the criminal transaction suggested irregularities in the identification process; and (3) where there was expert testimony explaining the process of identification and the possibility of mistaken recall?"

We affirm.

## FACTS

On June 18, 1986, Rick Svoboda came to appellant's house seeking pain pills. She said she did not have any, so Svoboda suggested that she get some from her doctor. That afternoon appellant, using the alias Delores Burgess, visited Dr. Richard Whalen's office complaining of abdominal pain. She testified that she intended to get some pain pills and that she planned to share them with Rick Svoboda, who she described as a drug addict. As she did not have an appointment, she waited for the doctor in an examining room where she had access to Dr. Whalen's blank prescription pads. When Dr. Whalen did examine her, he prescribed Tagament and Bentyl for the abdominal pain, although he noted that the pain could be contrived. When appellant left Dr. Whalen's office, Rick Svoboda was waiting for her. He asked her if she had obtained any pain pills, and she said no. He called her a liar, and she showed him the prescriptions she had received. They argued, appellant tore up the prescriptions, and Svoboda left.

Later that same day, a woman walked into a Casper pharmacy and presented a prescription for Percodan, a narcotic drug, made out to a Dawn Gilbert. The prescription was written on a form from Dr. Whalen's office and bore the purported signature of Dr. Whalen. The pharmacist, Oscar Ray, filled the prescription. However, the next day he examined the prescription more closely and grew suspicious that it might be forged. He called Dr. Whalen, who said he had not written any such prescription and that he did not have a patient named Dawn Gilbert. Mr. Ray then contacted the police. Subsequently, the police assembled a photo lineup from Mr. Ray's description, and he identified a picture of appellant as the woman who presented the prescription. Dr. Whalen also identified her from the photo lineup as the "Delores Burgess" he examined. Both also identified appellant at trial.

Appellant testified at trial that she did not pass the forged prescription. She said that after she was arrested, Rick Svoboda told her that a woman named Carol Burnett had passed the forged prescription. She described Burnett as someone who probably has the same hair color and body frame as herself. She contends that the similarity in appearance between herself and Carol Burnett raises a question as to the accuracy of Oscar Ray's identification of her as the perpetrator.

Appellant also offered the testimony of a psychologist, George Blau, who testified as an expert witness on information processing, perception and recall. Blau's testimony dealt primarily with problems associated

with eyewitness perception and memory recall.

## DISCUSSION

At the close of the evidence, appellant offered the following instruction, which was refused:

"One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing [sic] identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of the statement. However you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt of the accuracy of the identification of the defendant was [sic] the person who committed the crime, you must find the defendant not guilty.

"Identification testimony is an expression of belief or impression of the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

"In appraising the identification testimony of a witness, you should consider the following:

"1. Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

"(In general a witness bases any identification makes [sic] on his perception through the uses [sic] of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.)

"2. Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

"(You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.)

"3. You may take into account any occasions in which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with his identification at trial.

"4. Finally you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he has the capacity and opportunity to make a reliable observation on the matter covered in this [sic] testimony.

"I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of identification, you must find the defendant not guilty."

This proposed instruction is essentially the same as the "Model Special Instructions on Identification" adopted by the United States Court of Appeals, District of Colum-

bia Circuit, in *United States v. Telfaire*, 469 F.2d 552, 558 (1972).

The *Telfaire* instruction contains two separate components: burden of proof of identity and credibility of eyewitness identification testimony. The trial court in this case gave separate and appropriate instructions to the jury on burden of proof, reasonable doubt, and witness credibility. Appellant contends, nevertheless, that the *Telfaire* instruction should also have been given in order to present her theory of the case.

The trial court's refusal to give the instruction can be affirmed on either of two theories. First, even if defendant asserts that it represents her theory of the case, a court may refuse an instruction which is argumentative or unduly emphasizes one aspect of the case. *Prime v. State*, 767 P.2d 149, 154 (Wyo.1989); *Evans v. State*, 655 P.2d 1214, 1218 (Wyo.1982). In *Prime* we considered language of an instruction which was virtually identical to part of the instruction requested here and concluded that it represented "a skillful effort to induce the trial court to argue the case for the defense through its instructions." 767 P.2d at 154.

The rhetorical questions "Are you convinced * * * ?" and "Are you satisfied * * * ?" may be appropriate in argument but not as part of the court's charge to the jury. Further, the instruction emphasizes the identification as one of "the most important issues" in the case and repeatedly stresses that identification is an element to be proven beyond a reasonable doubt. We agree with those courts which hold that general instructions on reasonable doubt and credibility of witnesses are sufficient. *See, e.g., People v. Martinez*, 652 P.2d 174, 179 (Colo.App.1981); *People v. Hefner*, 70 Ill.App.3d 693, 27 Ill.Dec. 96, 99, 388 N.E.2d 1059, 1062 (1979).

Second, a defendant seeking a theory of the case instruction must satisfy two requirements. The defendant must offer an instruction which is sufficient to apprise the court of his theory of the case, and that theory must be supported by competent

evidence. *Best v. State*, 736 P.2d 739, 744 (Wyo.1987), and cases cited therein.

Here, the theory is not supported by competent evidence. The requested instruction directs the jury to consider a list of factors which might affect the accuracy of eyewitness identification testimony. Even if we assume for purposes of argument that there is a causal connection between certain physical factors and effect on reliability of identification, there is little or no evidence of the physical factors themselves in the record. For example, the instruction states that the jury should consider "how long or short a time was available," "how far or close the witness was" and "how good were lighting conditions" at the time the witness observed the offender. However, the record contains no direct evidence on any of these points, leaving only inference and speculation for a juror attempting to follow the instruction.

The case cited to the trial court as support for giving the instruction, *State v. Long*, 721 P.2d 483 (Utah 1986), and the source of the instruction itself, *Telfaire*, 469 F.2d at 555–57, stand for the proposition that eyewitness identification testimony is *inherently* suspect in *all* cases. We decline to adopt this view. We prefer dealing with questions actually presented by the evidence. While defendant's trial counsel was free to, and in fact did, argue to the jury that the evidence raised a possibility of mistaken identity, we find no basis for instructing the jury to consider possible factors not found in the evidence.

Affirmed.

URBIGKIT, Justice, specially concurring.

I concur in affirming the conviction of appellant and generally concur with the decision of this court, but write further to express concern about developments in the Wyoming law on the validity of eye-witness identification. Next to bad acts evidence, expert witness testimony and jury instructions on that subject have become some of the most prolific sources of appellate argument in this nation's criminal prosecution.

This is not a good case for exhaustive pursuit since appellant was previously known by the pharmacist, was previously seen by the doctor where the prescription blanks were used, and the identifications were founded on time and place components which connoted certainty. Additionally, the eye-witness expert was permitted to testify about the questionable characteristics of eye-witness identifications for support of the defense to establish reasonable doubt.

On appeal, appellant, although permitted use of the expert witness, now challenges denial of the theory of the eye-witness instruction questioning use of what has generally come to be described as the *Telfaire* instruction.[1] Consideration of all Wyoming cases on eye-witness identification provides little direction or stability. Unresolved is whether the defendant in defense of identification is entitled to an expert witness, an instruction of the *Telfaire* nature, both or neither. Is it purely a question of trial court discretion without regard for the strength or weakness of the issue within the trial court presentation? I can hardly believe the last choice of neither provides the stability and counseling that due process demands unless the exercise of discretion is clearly founded on a rationally differentiated factual basis in the individual case.

In national perspective, some courts use a *Telfaire* instruction[2] and some courts allow the expert witness.[3] On occasion, both are permitted, and at least generally some courts tend to allow neither. Superimposed on exercised discretion and its constituent is the seriousness and the validity of the defense presented. If it is a neighbor that has lived next door to the identifying witness for ten years, functionality of the defense itself is clearly less than de minimis.

I find no error here within the current state of Wyoming law since use of the expert witness was permitted and rational doubt further justifying a special instruction on identification was not persuasively presented. In a case like this with appropriately active final argument, use or nonuse of the instruction could hardly have mattered to the jury. In concurrence with the result in this case as properly exercised discretion, I remain dissatisfied with the absence of clear principles for cases of severe contest where either issues of expert witness or special instruction become serious ingredients in the determination of guilt or innocence. Concern also exists about any approach which would deny an instruction to the defendant on any legitimate theory of defense. *B–T Ltd. v. Blakeman*, 705 P.2d 307 (Wyo.1985); *Goodman v. State*, 573 P.2d 400 (Wyo. 1977).

I do not accept attribution from this decision that Wyoming should not adopt a general standard of utilization of the special instruction on eye-witness identification as has been done by many other states and particularly so if the trial court denies use of the alternative, the expert witness. Superimposed on all discussion of contested eye-witness identification is a failure to differentiate that function of credibility which is deliberate and intended from capability and capacity which encompass physical limitations of the testifying witnesses as an actual, even though perhaps unintended, constituent of invalidity. This court should not ignore the well-documented frequency of mistake which occurs in eye-witness identification with regard for what should be appropriate in the tough cases.[4] I do

---

1. *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir. 1972).

2. Kansas, Rhode Island, Utah, and West Virginia are examples. *See State v. Wheaton*, 240 Kan. 345, 729 P.2d 1183 (1986); *State v. Warren*, 230 Kan. 385, 635 P.2d 1236 (1981); *State v. Mastracchio*, 546 A.2d 165 (R.I.1988); *State v. Long*, 721 P.2d 483 (Utah 1986); and *State v. Watson*, 318 S.E.2d 603 (W.Va.1984). *See also* Note, *Eyewitness Identification Testimony and*

*The Need For Cautionary Jury Instructions in Criminal Cases*, 60 Wash. U.L.Q. 1387 (1983).

3. *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983); *People v. McDonald*, 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709 (1984).

4. The prevalence of cases and law review analyses are almost beyond count. *See* Annotation, *Admissibility, at Criminal Prosecution, of Expert Testimony on Reliability of Eyewitness Testimo-*

not find undone justice on this occasion and consequently concur even if the instruction addressing the thesis of defense could have also been properly given. *People v. Wright,* 45 Cal.3d 1126, 248 Cal.Rptr. 600, 755 P.2d 1049 (1988). *See California Supreme Court Survey—May 1988–July 1988,* 16 Pepperdine L.Rev. 431 (1989).

*ny,* 46 A.L.R.4th 1047 (1986) and Annotation, *Necessity of, and Prejudicial Effect of Omitting, Cautionary Instruction to Jury as to Reliability* *of, or Factors to be Considered in Evaluating, Eyewitness Identification Testimony—State Cases,* 23 A.L.R.4th 1089 (1983).