THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JEREMY D. JENNINGS, Defendant-Appellee.

Fourth District    No. 4—98—0250

Opinion filed December 18, 1998.

William G. Workman, State's Attorney, of Lincoln (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Frederick J. Schlosser, of Gates, Wise & Schlosser, P.C., of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendant, Jeremy D. Jennings, was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 1996)). The trial court granted defendant's motion *in limine* to bar the results of blood-alcohol tests. The State appeals. We reverse and remand.

On June 14, 1997, defendant was involved in a one-vehicle accident and transported to the hospital. At the hospital, police officer Dave Sielaff directed a nurse to draw defendant's blood for analysis of blood-alcohol content (BAC). Officer Sielaff took custody of the two sealed tubes of blood, transported them to the Logan County Safety Complex, and placed them in the evidence locker. On July 2, 1997, 18 days after the blood withdrawal, Officer Chris Carmichael delivered the blood samples to the Springfield Forensic Science Laboratory (Laboratory). On July 10, 1997, Dareea Paiva, a forensic scientist employed at the laboratory, analyzed one of the tubes of blood. Her analysis revealed a blood ethanol content of 0.196.

Defendant was charged with DUI with a BAC of .10 or more. In response, defendant filed a motion *in limine* to bar the State from introducing the blood test results. Defendant argued the 18-day time lapse from the time his blood was drawn to the time it was delivered to the Laboratory, in addition to the eight-day time lapse from the time the blood was delivered to the time it was analyzed, violated the Illinois Administrative Code (Code), as section 510.110(a)(4)(D) of Title 77 of the Code states that "blood samples shall be delivered *directly* to a laboratory certified by the Department." (Emphasis added.) 77 Ill. Adm. Code § 510.110(a)(4)(D) (1996).

The State responded to defendant's motion with an affidavit signed by scientist Paiva. Her affidavit stated (1) she had personal knowledge of the facts; (2) she is a forensic scientist that works at the Laboratory, she has a joint bachelor's degree in chemistry and biology, and has completed graduate level courses in pharmacology; (3) she is certified by the Illinois Department of Public Health; (4) on July 2, 1997, the Laboratory received two sealed tubes of blood samples purported to have been taken from defendant Jeremy Jennings; the tubes were standard, gray top, blood test kit tubes, which is indicative that the blood samples contained anticoagulants and preservatives; the tubes contained the initials "DS" and were unbroken; (5) she analyzed the blood in one of the tubes and found a BAC of 0.196; (6) based on her education, training, and experience, as long as the tubes were properly sealed and contained the proper anti-coagulants and preservatives, the 27-day time lapse between the drawing of the blood and the analysis of the sample in no way affected the validity or accuracy of the analysis; and (7) given the realities of evidence collection, transportation,

and analysis, a 27-day time lapse between drawing and analyzing a blood sample was not an uncommon practice nor did it compromise the integrity of the Laboratory.

After a hearing, the trial court granted defendant's motion to exclude the blood test results. The court held the 18-day time lapse between the time defendant's blood was drawn and the time it was delivered to the Laboratory violated the "direct" delivery requirement of the Code. The State appeals, arguing the time lapse did not violate the Code and the test results were not prejudiced by the delay.

■ Section 510.110 of Title 77 of the Code details the required procedures for the collection of blood and urine for chemical analysis. It mandates that vacuum-type tubes and anticoagulant/preservatives shall be used, the tubes shall be properly labeled, and the identity and integrity of the sample shall be maintained through collection to analysis. After withdrawal, the "blood samples shall be delivered *directly* to a laboratory certified by the Department." (Emphasis added.) 77 Ill. Adm. Code § 510.110(a)(4)(D) (1996). Compliance with these standards is a prerequisite to the admissibility of blood test results in a DUI trial. *People v. Emrich*, 113 Ill. 2d 343, 349-50, 498 N.E.2d 1140, 1142-43 (1986).

■ The term "directly" is not defined in the Code. The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute. *People v. Woodard*, 175 Ill. 2d 435, 443, 677 N.E.2d 935, 939 (1997). In determining legislative intent, courts should give statutory language its plain and ordinary meaning. *Lucas v. Lakin*, 175 Ill. 2d 166, 171, 676 N.E.2d 637, 640 (1997). In addition, a court may properly consider the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *People v. Rose*, 268 Ill. App. 3d 174, 178, 643 N.E.2d 865, 868 (1994). This is a matter of statutory construction; therefore, the proper standard of review is *de novo*. *Lucas*, 175 Ill. 2d at 171, 676 N.E.2d at 640.

■ The term "directly" has more than one possible meaning. One meaning contains a time element, as in someone should be rushed directly, or *immediately*, to the hospital. The other meaning refers to the route taken, as in "go directly to jail, do not pass Go." The legislature may have contemplated both or a combination of these meanings. However, we do not believe the legislature intended a strict rule that blood samples must be rushed to the laboratory at the precise moment the sample is taken by the most direct route possible. It is often impractical for the police to drop everything and transport blood samples one at a time to the laboratory every time one is taken. We conclude the legislature intended a standard of reasonableness. So

long as the State transports the blood samples with reasonable diligence and without any unnecessary detours, then it has "directly" delivered the blood samples.

Defendant argues the 18-day time lapse was unreasonable. In *People v. Schumann*, 120 Ill. App. 3d 518, 523, 458 N.E.2d 182, 186 (1983), the court held the blood samples were *directly* delivered even though there was a 32-hour delay between withdrawal of the blood and delivery to the laboratory. The court noted the blood was withdrawn on a Sunday morning and held it was not unreasonable for the police to wait until Monday morning to deliver the sample. Also, no evidence showed the samples were tampered with and defendant failed to show how he was prejudiced by the 32-hour delay. *Schumann*, 120 Ill. App. 3d at 523, 458 N.E.2d at 186.

Here, the time lapse between blood withdrawal and delivery was 18 days, much longer than 32 hours. However, this was still not an unreasonable delay. Paiva's uncontroverted affidavit stated that, given the realities of evidence collection, transportation, and analysis, a 27-day time lapse between drawing and analyzing a blood sample was not an uncommon practice nor did it compromise the integrity of the Laboratory. It also stated that so long as the tubes were properly sealed and contained the proper preservatives, the 27-day time lapse did not affect the validity or accuracy of the analysis.

It is also relevant that, when read as a whole, section 510.110 seems mostly concerned with the chain of custody and integrity of the evidence, not how quickly the blood is analyzed. Section 510.110 details how the blood should be stored, what kind of equipment to use, what kind of preservatives to use, and how it should be initialled and identified. We conclude the "direct delivery" rule was adopted to help ensure the samples were safely delivered and properly identified and not because the samples needed to be tested within a certain time frame. In this case, the fact that 18 days lapsed between withdrawal and delivery of the blood did not cast doubt as to the identity of the blood sample or accuracy of the test results.

We also conclude it was reasonable for the police to transport the blood sample from the hospital to the Logan County Safety Complex before it was delivered to the Laboratory. It is reasonable for police officers to store blood samples from various investigations for short periods of time in a safe, designated place and, at routine intervals, transport those samples to the Laboratory for analysis. Judging from the record, that seems to be what happened here. In view of all the circumstances, we hold the State adequately complied with section 510.110(a)(4)(D) of Title 77 of the Code and directly delivered the

blood samples. Therefore, we reverse the circuit court's decision to bar the evidence of defendant's blood test results.

Reversed and remanded.

KNECHT, P.J., and GARMAN, J., concur.