THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICIA RUPPEL, Defendant-Appellant.

Fourth District   No. 4—98—0411

Argued January 12, 1999.—Opinion filed March 22, 1999.

COOK, J., specially concurring.

Robert G. Kirchner (argued), of Lerner & Kirchner, of Champaign, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Patricia Ruppel, defendant, appeals her conviction for driving with a blood-alcohol concentration (BAC) over .10. 625 ILCS 5/11—501(a)(1) (West 1996). Most of defendant's arguments relate to the admissibility of involuntary blood test results that indicated defendant had a BAC of .228. Defendant argues (1) the State failed to show it had probable cause to arrest her or to perform the blood test; (2) the blood sample was not lawfully drawn; (3) the State failed to provide an adequate foundation for the blood test results; and (4) the trial court erred by allowing the State to reopen its case to cure a defect in the foundation given for the blood test results. Defendant also raises several evidentiary issues and argues the trial court erroneously rejected three of the jury instructions she offered. We affirm.

The parties are well aware of the facts of this case, and they will only be discussed as relevant to our analysis.

■ Defendant first argues the trial court erred by denying her motion to quash her arrest for lack of probable cause. A warrantless arrest will be deemed lawful only when probable cause has been proved. *People v. Robinson*, 167 Ill. 2d 397, 405, 657 N.E.2d 1020, 1025 (1995).

A denial of a motion to quash an arrest for failure to show probable cause will be reversed only if the trial court's decision is manifestly erroneous. *People v. Cabrera*, 116 Ill. 2d 474, 485-86, 508 N.E.2d 708, 712 (1987). Probable cause to arrest exists when facts exist that would lead a reasonable person standing in the shoes of the police officers to conclude that a crime has been committed and the defendant is the person who committed the crime. *Robinson*, 167 Ill. 2d at 405, 657 N.E.2d at 1025.

In this case, Champaign police officer Bruce Ramseyer placed defendant under arrest at a hospital where she was taken on March 15, 1997, after she drove her car into a stalled truck driven by Amanda Judth. Judth and Mike Cloyd, a passenger in the truck, were taken from the scene by ambulance. Mark Parr, a retired member of the Carroll fire department with training as an emergency medical technician, was at the accident scene and spoke with defendant before she was taken to the hospital by ambulance. He testified he did not smell alcohol on defendant.

Ramseyer and fellow officer Melinda Williams also spoke with defendant at the accident scene. Neither Williams nor Ramseyer observed any skid marks in the intersection. Ramseyer testified this was a sign defendant did not make a reasonable response to the stalled truck and did not attempt to stop.

While Williams did not smell alcohol on defendant's breath when she first spoke with her, Ramseyer smelled a moderate odor of alcohol on her breath. Defendant spoke with Williams and admitted to her she had consumed two beers. Ramseyer testified defendant's eyes were red. Though Ramseyer also testified defendant's eyes were glassy, he retracted this statement when confronted with his initial and supplemental reports, which did not include this detail. Ramseyer described defendant's speech as slurred, but repeatedly stated it was not "the worst slurred that [he's] ever heard." Both Williams and Ramseyer admitted testifying at the prior trial that defendant's speech was not slurred. However, Ramseyer maintained defendant's speech was not quite "perfect."

Ramseyer testified defendant did not have any difficulty with balance, her clothes were not disheveled, she appeared to be calm, and her account of the accident was consistent. Williams admitted testifying at the prior trial that defendant did not have any trouble standing. Norma Ruppel, defendant's mother, testified she saw her later that evening and defendant appeared upset but sober, and she did not smell of alcohol.

After speaking with defendant, Ramseyer left to talk to others present at the scene. When Ramseyer returned a minute later, he

could still smell alcohol on defendant's breath, but she was then chewing on peppermint gum or candy. Williams also testified defendant appeared to be chewing gum the second time she talked to her.

Defendant told Parr she did not believe she was injured, and neither Parr nor either officer noticed any injuries. According to Ramseyer, defendant told him at the accident scene that she did not need any treatment. However, when both officers were busy attending to other matters at the accident scene, defendant was voluntarily taken to the hospital by ambulance. Ramseyer testified that, when he arrived at the hospital, he learned defendant had refused to receive treatment. The trial court found probable cause, commenting that Ramseyer was "an exceptionally credible witness."

Red eyes, altered speech, and the odor of alcohol are factors that could lead a reasonable person to conclude a suspect was driving under the influence of alcohol (DUI). *People v. Brodeur*, 189 Ill. App. 3d 936, 941, 545 N.E.2d 1053, 1057 (1989).

■ Defendant points to *People v. Lukach*, 263 Ill. App. 3d 318, 326, 635 N.E.2d 1053, 1059 (1994). Though this case is similar to *Lukach* in several respects, there are several crucial differences. First, the trial court found in favor of the defendant in *Lukach*. The standard of review cuts the other way here, where the trial court ruled in favor of the State. Second, Ramseyer noted defendant's eyes were bloodshot, though not all of his reports included this detail. Third, Ramseyer noted defendant had the smell of alcohol on her breath. Fourth, Ramseyer testified defendant's speech, though perhaps not slurred, was altered. Fifth, there were no skid marks around the pickup truck, suggesting defendant did not attempt to stop, as a reasonable person not under the influence of alcohol would.

The trial court could also infer defendant's guilty knowledge from the fact she apparently attempted to cover the smell of alcohol on her breath with a peppermint, and she voluntarily left the accident scene in an ambulance even though she did not need or want medical treatment. While factors such as furtive gestures, attempts to hide items when speaking with police, or attempts to flee police are not enough alone to support a finding of probable cause, they may be considered when other circumstances tending to show probable cause are present. See *People v. Felton*, 20 Ill. App. 3d 103, 106, 313 N.E.2d 642, 645 (1974); *People v. Belton*, 257 Ill. App. 3d 1, 6, 628 N.E.2d 287, 291 (1993); *People v. Matthews*, 137 Ill. App. 3d 870, 875, 485 N.E.2d 403, 407 (1985). The trial court could and did properly find probable cause to arrest.

■ Defendant next contends the trial court erred by allowing the State to submit the results of an involuntary blood test performed at

the hospital. As a constitutional matter, involuntary blood tests are admissible where they are supported by probable cause, the evidence is of an evanescent nature, and they are performed by medical personnel in a reasonable and medically acceptable manner. See *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); *cf. People v. Byrd,* 215 Ill. App. 3d 468, 471, 574 N.E.2d 1269, 1271 (1991); *People v. Brown,* 175 Ill. App. 3d 725, 530 N.E.2d 71 (1988) (standard for involuntary breath tests). Defendant's blood contained evanescent evidence, her changing BAC. The test in this case was performed in a hospital by medical personnel according to standard medical procedures. As seen above, Ramseyer had probable cause to stop defendant for DUI before he ordered the test.

■ However, the legislature may still place statutory limits on the collection and use of involuntary sobriety tests. *Byrd,* 215 Ill. App. 3d at 471, 574 N.E.2d at 1271. Defendant argues the involuntary blood test was performed pursuant to section 11—501.6(b) of the Illinois Vehicle Code (Code) (625 ILCS 5/1—100, 11—501.6(b) (West 1996)). This section provides that, at the request of a police officer, medical personnel shall draw blood for BAC testing from the driver of a vehicle receiving medical treatment as a result of an accident. 625 ILCS 5/11—501.6(b) (West 1996).

We affirm the trial court's determination that section 11—501.6(b) does not apply here because defendant was not receiving medical treatment at any point. Dr. John Peterson testified defendant had not been given any medications or drugs in the emergency room.

■ Defendant argues the State is judicially estopped from relying on any authority other than section 11—501.6(b). She points to the State's position in a civil appeal from defendant's driver's license suspension, arising out of the same facts as this case. See *People v. Ruppel,* No. 4—97—0509 (December 31, 1997) (unpublished order under Supreme Court Rule 23). In that appeal, both sides gave conflicting statements as to whether the involuntary test was authorized under section 11—501.6 or section 11—501.2(c)(2) of the Code (625 ILCS 5/11—501.2(c)(2) (West 1996)), discussed below.

The issue at hand is irrelevant to the reasoning of the prior decision. This district concluded that, regardless of which section justified the involuntary test, the summary suspension for refusal to take a blood test was pursuant to section 11—501.1 of the Code (625 ILCS 5/11—501.1 (West 1996)). Because neither party got any clear benefit from its position on this point in the prior litigation, judicial estoppel does not apply. See *Department of Transportation v. Grawe,* 113 Ill. App. 3d 336, 341-42, 447 N.E.2d 467, 471 (1983).

■ We affirm the trial court's determination that the blood test

was authorized by section 11—501.2(c)(2) of the Code. That section requires a driver to submit to a blood test upon the request of an officer if the officer has probable cause to believe a vehicle driven by him while under the influence of alcohol has caused personal injury to another. 625 ILCS 5/11—501.2(c)(2) (West 1996). As noted above, Ramseyer had probable cause to believe defendant was DUI at the time of the accident, and he issued her a ticket for this offense. The evidence concerning the occupants of the truck, their removal therefrom and their transfer to the hospital by ambulance supports the trial court's finding of injury and shows probable cause that defendant's driving caused personal injury. 625 ILCS 5/11—501.2(c)(3) (West 1996).

Defendant argues section 11—501.2(c)(2) does not authorize involuntary blood tests. We disagree. Section 11—501.2(c)(2) clearly provides a driver "shall submit" to a blood test as requested by the officer. 625 ILCS 5/11—501.2(c)(2) (West 1996). By requiring probable cause for a DUI, this section ensures one of the constitutional requirements for an involuntary blood test under *Schmerber* is met. Other constitutional prerequisites for an involuntary blood test are met by requirements in section 11—501.2(a) of the Code. See 625 ILCS 5/11—501.2(a) (West 1996) (providing for regulation of blood tests by the Department of Public Health (Department) and oversight by medical personnel). Section 11—501.2(c)(2) explicitly provides that it shall apply in addition to sanctions under section 11—501.1 and that it shall apply "[n]otwithstanding any ability to refuse under this Code to submit" to blood tests. 625 ILCS 5/11—501.2(c)(2) (West 1996).

Defendant argues the supreme court has recently barred the use of involuntary blood test results in criminal trials. In *King v. Ryan*, 153 Ill. 2d 449, 607 N.E.2d 154 (1992), the supreme court declared section 11—501.6(a) of the Code facially unconstitutional because it allowed involuntary blood test results to be admitted in criminal trials without a finding of probable cause. The supreme court later upheld the constitutionality of section 11—501.6(a) under the "special needs" exception to the probable cause requirement, after the legislature deleted section 11—501.6(e), which allowed the test results to be used in civil and criminal proceedings. *Fink v. Ryan*, 174 Ill. 2d 302, 309, 673 N.E.2d 281, 285-86 (1996).

*Fink* does not bar the use of involuntary blood test results in criminal trials. In *Fink*, the supreme court stated that "[i]f the admission of chemical test results in a criminal proceeding is incidental to a statute's purpose, application of the 'special needs' exception is not precluded." *Fink*, 174 Ill. 2d at 313, 673 N.E.2d at 287. The *Fink* court did not read the amendment to section 11—501.6(c) to mean that involuntary blood tests were now inadmissible in criminal trials but

rather that, even though they are admissible, this is incidental to the statute's primary purpose of preventing drunk driving. *Fink*, 174 Ill. 2d at 313, 673 N.E.2d at 287. This was emphasized by Justice Bilandic's dissent, which stated, "[t]he majority opinion acknowledges, as it must, that search results will routinely be used in criminal proceedings." *Fink*, 174 Ill. 2d at 319, 673 N.E.2d at 290 (Bilandic, C.J., dissenting). Here, the State need not rely on the "special needs" exception at issue in *Fink* to justify searches under section 11—501.2(c)(2), because this section requires probable cause for DUI before a blood test can be taken.

■ Although defendant does not argue the blood tests themselves are privileged, she does argue information acquired by Peterson and Van Tedrick, the nurse who took the sample, is privileged. The physician-patient privilege applies to information obtained "in attending any patient in a professional character" that is "necessary to enable him or her professionally to serve the patient." 735 ILCS 5/8—802 (West 1996). Defendant argues the State violated this privilege by having *ex parte* conversations with these witnesses. See *Pourchot v. Commonwealth Edison Co.*, 224 Ill. App. 3d 634, 636, 587 N.E.2d 589, 591 (1992).

■ The trial court could reasonably conclude the conversations were never privileged. The purpose of the privilege is to encourage full disclosure to ensure the best diagnosis and treatment for the patient. See *People v. Wilber*, 279 Ill. App. 3d 462, 467, 664 N.E.2d 711, 715 (1996). The privilege typically applies when the information is obtained from a procedure necessary to diagnose and treat the patient. See *People v. Maltbia*, 273 Ill. App. 3d 622, 627-28, 653 N.E.2d 402, 405-06 (1995). The blood test was ordered by Ramseyer as an investigatory tool, unlike tests under section 11—501.4 of the Code (625 ILCS 5/11—501.4 (West 1996)), ordered by a doctor as a medical tool. The blood test was not used for any medical purpose.

■ Defendant argues the crime lab was not certified by the Illinois Department of Public Health (Department) at the time the analysis was done, as required by the Illinois Administrative Code (Administrative Code) (77 Ill. Adm. Code §§ 510.110(a)(4)(D), 510.120 (1996)). John Wettstein, a forensic scientist for the police, testified the lab was certified by the Department. Absent evidence to show that the certification is not valid, Wettstein's own testimony as to certification was sufficient. See *People v. Caruso*, 201 Ill. App. 3d 930, 940-41, 559 N.E.2d 545, 552 (1990).

Defendant argues no foundation was laid for Wettstein's testimony. We disagree. Wettstein testified certification was required by state statute and regulations, and he was aware of some of the necessary

qualifications. Though it was unclear initially whether Wettstein was talking about certification by the Department or some other organization, he clarified that he was referring to Department certification when he was recalled as a witness by the State.

■ Defendant next argues the trial court erred in allowing the State to reopen its case after it had rested to present this additional testimony from Wettstein. The trial court may, in its discretion, allow the State to reopen its case, upon considering (1) whether the failure to introduce evidence occurred because of inadvertence; (2) surprise or unfair prejudice to the adverse party; (3) the importance of the new evidence to the movant's case; and (4) whether cogent reasons exist to justify denying the request. See *A-Tech Computer Services, Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 402-03, 627 N.E.2d 21, 28 (1993); *Polk v. Cao*, 279 Ill. App. 3d 101, 104, 664 N.E.2d 276, 278-79 (1996). The trial court could reasonably conclude all of these factors favored reopening the case here.

We do note that a trial judge errs by directing the State to reopen its case if, in doing so, he abandons his role as judge and assumes the role of advocate for the prosecution. *People v. Kuntz*, 239 Ill. App. 3d 587, 591-92, 607 N.E.2d 313, 316-17 (1993); *People v. Ousley*, 297 Ill. App. 3d 758, 765, 697 N.E.2d 926, 930-31 (1998). Here, the trial court had earlier overruled a foundation objection to the blood test and only reopened the case when it later reconsidered this ruling. The State relied on this ruling when presenting its case. If the trial court had initially ruled correctly on the foundation objection, the State could have corrected the foundation error and then resubmitted the evidence. *Cf. Janisco v. Kozloski*, 261 Ill. App. 3d 963, 966, 634 N.E.2d 1104, 1106 (1994) (holding any valid objections defendant may have had to the foundation for admitting medical bills into evidence were waived by counsel's failure to make specific contemporaneous objections at trial so that any defect could have been cured). In allowing the State to reopen its case the court was merely correcting any prejudice to the State caused by its prior mistake.

■ Defendant argues the State failed to demonstrate a preservative or anticoagulant had been used on the blood (77 Ill. Adm. Code § 510.110(a)(4)(B) (1996)). Wettstein testified that the label on the blood sample indicated both were present. Wettstein also testified the vials were gray-topped, which indicates the tube contains a preservative and anticoagulant. Finally, Wettstein testified that he could tell from visual inspection of the blood itself whether sufficient preservatives or anticoagulants had been used. Though Wettstein could not tell the precise amount from visual inspection, he stated that, had insufficient amounts of either drug been used, the blood would have clotted visibly, and the blood would be putrefied.

With respect to the labels being hearsay, a manufacturer's content label is hearsay but may be sufficiently reliable and trustworthy on its face to constitute a special exception to the hearsay rule where such labeling is required by law. See *In re T.D.*, 115 Ill. App. 3d 872, 876, 450 N.E.2d 455, 458 (1983). Here, the Administrative Code specifically requires the vials to be labeled to provide the type of anticoagulant and preservative. 77 Ill. Adm. Code § 510.110(a)(4)(C)(i) (1996).

■■ Defendant argues the State failed to offer evidence that a disinfectant containing no alcohol had been used to prepare defendant for the blood test, as required by the Administrative Code (77 Ill. Adm. Code § 510.110(a)(3) (1996)). Tedrick testified that Provadine, an alcohol-free base, was used as a disinfectant. While Tedrick testified he knew this solely from a label on the disinfectant swab, which was arguably inadmissible hearsay, he also testified he could identify Provadine from its color and he uses it as a cleanser in his everyday experience.

■■ Defendant argues the vials were not delivered to the lab directly, as required by the Administrative Code (77 Ill. Adm. Code § 510.110(a)(4)(D) (1996)), because of the 12-day delay between the collection of the blood sample and its delivery to the lab. In *People v. Jennings*, 301 Ill. App. 3d 794, 797, 704 N.E.2d 428, 431 (1998), this district held an 18-day delay between collection of the blood and delivery to the laboratory was not unreasonable and did not violate the Code, as (1) the delay was not uncommon, (2) the sample was properly sealed and preserved, and (3) no evidence indicated the delay affected the validity or accuracy of the analysis. According to the testimony of Tedrick, Ramseyer, Wettstein, and Lisa Staples, an evidence technician, the test kit was new before it was first used, sealed after the blood sample was taken, and remained sealed until it was opened in the laboratory for testing.

■■ Defendant notes Ramseyer had an incentive to taint the sample to cover up his mistake in issuing a ticket for driving with a blood-alcohol level over .10 before he had received the results of the blood test. She also argues the trial court erred by granting the State's motion *in limine* barring her from submitting evidence of this mistake. Because Ramseyer testified as to his mistake at trial, and defense counsel cross-examined him on this point, any error in barring this testimony would have been harmless. *Cf. Holmes v. Sahara Coal Co.*, 131 Ill. App. 3d 666, 673, 475 N.E.2d 1383, 1388 (1985) (erroneous order *in limine* was harmless error when only evidence offered on point was admitted despite order); *People v. Hines*, 94 Ill. App. 3d 1041, 1047-49, 419 N.E.2d 420, 425-26 (1981) (erroneous order *in limine* barring impeachment testimony did not violate defendant's confronta-

tion clause rights when jury was made aware of adequate factors concerning relevant areas of impeachment). In light of the above testimony demonstrating the sample was intact, and the trial court's finding that Ramseyer was an exceptionally credible witness, the evidence of his motive to taint the sample does not distinguish *Jennings*.

■ Defendant's arguments that the trial court erred by (1) allowing testimony that Cloyd or Judth was removed from the accident scene by ambulance and (2) allowing Wettstein to testify about a scientific article that related to a disagreement between Staples and Wettstein as to how long a blood sample could remain unrefrigerated without being tainted are without merit. We note that both Staples and Wettstein agreed the sample was not affected by the period it remained unrefrigerated here. Even if erroneous, the admission of the evidence was harmless.

■ Finally, defendant argues the trial court erred in rejecting three jury instructions she offered at trial. Two of these instructions related to the DUI charge. Because the jury found defendant not guilty on that charge, any error in rejecting them is also harmless. See, *e.g.*, *People v. Logston*, 196 Ill. App. 3d 30, 37, 552 N.E.2d 1266, 1270 (1990).

The third instruction was a special interrogatory that asked the jury to determine whether the State proved beyond a reasonable doubt that defendant's BAC was .228 at the time of the accident. The trial court could reject this instruction because it was a disfavored special interrogatory in a criminal case (*People v. Testin*, 260 Ill. App. 3d 224, 235, 632 N.E.2d 645, 652 (1994)); it was not an approved Illinois Pattern Jury Instruction (*People v. Gilliam*, 172 Ill. 2d 484, 519, 670 N.E.2d 606, 622 (1996)); and it was legally incorrect and misleading (*People v. Manley*, 222 Ill. App. 3d 896, 913, 584 N.E.2d 477, 491 (1991)).

## CONCLUSION

For all of the above reasons, we affirm.

Affirmed.

KNECHT, P.J., concurs.

JUSTICE COOK, specially concurring:

It seems clear that the involuntary blood test here could not be upheld under section 11—501.6(a) of the Code, the section upheld in *Fink*. The three prerequisites to the applicability of section 11—501.6(a) are (1) a driver; (2) involvement in a personal injury motor vehicle accident; and (3) arrest for a nonequipment violation of the

Code. 625 ILCS 5/11—501.6(a) (West 1996). Such a driver "shall be deemed to have given consent" (625 ILCS 5/11—501.6(a) (West 1994)) to a blood test for the purpose of determining the driver's BAC, even if there is no individualized suspicion, no probable cause, that the driver was chemically impaired. *Fink*, 174 Ill. 2d at 309, 673 N.E.2d at 286.

Under the "special needs" exception, a search or seizure may be reasonable absent individualized suspicion in two types of cases: (1) when the intrusion upon the person to be searched is minor; or (2) when the person to be searched has a diminished expectation of privacy. *King*, 153 Ill. 2d at 458-59, 607 N.E.2d at 159; *Fink*, 174 Ill. 2d at 306, 673 N.E.2d at 284. The constitutionality of section 11—501.6(a) has been upheld because it fills such a "special need": it removes chemically impaired drivers from the road without relying on criminal sanctions. *Fink*, 174 Ill. 2d at 308, 673 N.E.2d at 285. Section 11—501.6(a) is not unconstitutional just because the chemical test results may also be used in a criminal proceeding. Such a use of the results would only be incidental to the primary purpose of the statute. *Fink*, 174 Ill. 2d at 313, 673 N.E.2d at 287.

As applied in this case, section 11—501.6(a) would be unconstitutional. The police officer here requested that defendant submit to a breathalyzer test. See 625 ILCS 5/11—501.6(a) (West 1996). Defendant refused, and as a consequence of that refusal the Secretary of State was entitled to summarily suspend defendant's driver's license. 625 ILCS 5/11—501.6(d) (West 1996). It was not necessary for the police officer to involuntarily take defendant's blood in order to fulfill the "special need" of removing a chemically impaired driver from the road. After the defendant refused the breathalyzer test, the officer insisted on a blood test, not to allow defendant's license to be suspended, but to bolster the evidence that would be presented against defendant in the criminal case. Of course the refusal to submit to the breathalyzer test was itself admissible in the criminal case (625 ILCS 5/11—501.2(c)(1) (West 1996)), but the officer correctly observed that the evidence of DUI was weak, as borne out by the jury's vote to acquit on that charge. It was not necessary for the officer to require a blood test here as it might be in cases where the driver was unconscious. It is also clear that a driver cannot be forced to submit to a blood test under section 11—501.6(a) of the Code. 625 ILCS 5/11—501.6(c) (West 1996) ("[a] person requested to submit to a test as provided above shall be warned *** that a refusal to submit to the test *** may result in the suspension of such person's privilege to operate a motor vehicle").

As the majority points out, the section involved in this case, section 11—501.2(c)(2) of the Code, differs from section 11—501.6(a) in

that section 11—501.2(c)(2) requires there be probable cause to believe that the motor vehicle was driven by a person under the influence of alcohol. The analysis of this section is accordingly completely different from the analysis under *Fink*, despite the similarity of the statutes. Although the question is a close one, I accept the finding of the trial court that the officer had probable cause. I also agree with the majority that the language of section 11—501.2(c)(2) of the Code, which differs from the language of section 11—501.6(a), allows blood to be drawn involuntarily.