NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220806-U

NO. 4-22-0806

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 6, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 18JA274 |
| v. | ) | |
| Samantha S., | ) | Honorable |
| Respondent-Appellant). | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

---

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice DeArmond and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed, concluding (1) the circuit court's consideration of the best interest report, which was not admitted into evidence, was not plain error and (2) the circuit court did not err in finding it was in the minor's best interest to terminate respondent's parental rights.

¶ 2   Respondent, Samantha S., appeals from the Winnebago County circuit court's judgment terminating her parental rights to her minor child, D.W. (born March 21, 2012). Respondent argues the State failed to prove by a preponderance of the evidence that it was in D.W.'s best interest that her parental rights be terminated because it failed to present any evidence at the best interest hearing. The State argues respondent forfeited her claim and the circuit court's determination that termination was in D.W.'s best interest was nonetheless not against the manifest weight of the evidence. We affirm.

¶ 3                          I. BACKGROUND

¶ 4                                    A. Case Opening

¶ 5          On August 23, 2018, the State filed a petition for adjudication of wardship and temporary custody as to D.W. Following a shelter care hearing, the circuit court found that there was probable cause to believe that D.W. was neglected, and it ordered temporary guardianship and custody of the child to be placed with the Illinois Department of Children and Family Services (DCFS). The factual basis for the court's finding was that respondent had a substance abuse issue with alcohol that created an environment injurious to D.W.'s welfare. On December 19, 2018, the court adjudicated D.W. neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)). Following a dispositional hearing held on February 5, 2019, the court made D.W. a ward of the court and granted continued guardianship and custody with DCFS.

¶ 6          On March 23, 2022, the State filed a petition to terminate respondent's parental rights. The petition alleged that respondent was an unfit parent in that she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to D.W.'s welfare (750 ILCS 50/1(D)(b) (West 2020)) (count I); (2) protect D.W. from conditions within the environment injurious to his welfare (750 ILCS 50/1(D)(g) (West 2020)) (count II); (3) make reasonable efforts to correct the conditions that caused D.W. to be removed during a nine-month period after D.W. was adjudicated neglected, namely, the period of July 9, 2019, to April 9, 2020 (750 ILCS 50/1(D)(m)(i) (West 2020)) (count III); and (4) make reasonable progress toward the return of D.W. to her care during a nine-month period after D.W. was adjudicated neglected, namely, the periods of April 3, 2019, to January 3, 2020, and May 25, 2021, to February 25, 2022 (750 ILCS 50/1(D)(m)(ii) (West 2020)) (count IV). The State also filed a petition to terminate the parental rights of D.W.'s father, Eugene W., who is not a party to this appeal.

¶ 7                                    B. Fitness Hearing

¶ 8            The case proceeded to a parental fitness hearing on May 3, 2022.

¶ 9            Lacey Timoti was the State's sole witness. Timoti testified she was a caseworker at Children's Home and Aid (CHA), where she had been D.W.'s caseworker for about one year. D.W. had been in a traditional foster placement since 2018 and initially came into care because an incident occurred wherein respondent allegedly struck D.W. on the top of his head. Additionally, there were concerns of domestic violence in the home between respondent and Eugene W., as well as allegations of both parents' substance abuse.

¶ 10           According to respondent's integrated assessment, she was to engage in the following services: individual therapy, substance abuse services, family therapy, a domestic violence assessment, mental health services, a psychiatric consultation, parental education and coaching, and visit coaching. The State then introduced exhibit Nos. 4 through 11, which were service plans prepared by DCFS over the course of the case and were later admitted into evidence without objection.

¶ 11           Between August 2018 and September 2020, respondent's compliance with her service plans varied; she was typically rated as satisfactory in some areas and unsatisfactory in others. According to exhibit No. 10, which was dated March 9, 2021, respondent was rated as satisfactory in all aspects of her service plan. However, according to exhibit No. 11, which was respondent's service plan dated September 9, 2021, respondent was rated as satisfactory for parenting, domestic violence, and anger management, but unsatisfactory for substance abuse and mental health. Timoti testified that respondent was rated unsatisfactory for substance abuse for this particular service plan after Timoti discovered a bottle of alcohol on respondent's kitchen table during a home visit. According to the report, respondent admitted to drinking on two

occasions during that time period and missed 8 of 15 drug screenings; respondent did, however, test negative for the 8 screenings she attended. Due to respondent's relapse, it was then recommended that respondent complete a second substance abuse assessment, after which respondent was to attend intensive outpatient therapy. However, respondent did not pursue these services due to her work schedule. On cross-examination, Timoti testified respondent completed anger management classes and provided verification of her attendance at Alcoholics Anonymous meetings.

¶ 12       The case was continued to August 10, 2022, and respondent testified on her own behalf. Respondent testified she completed both substance abuse and mental health assessments in 2020. She successfully completed a dual diagnosis program at Rosecrance Ware Center, and although she also completed a domestic violence assessment at Turning Points, she was not recommended for those services. Respondent began unsupervised visits with D.W. in August 2021 and completed anger management classes in either October or November 2021. Respondent did not miss any supervised visits at CHA from April 2019 to January 2020. However, between May 2021 and February 2022, respondent missed "about a visit or two" when she contracted COVID-19. On cross-examination, respondent admitted she had been discharged from KP Counseling, where she was receiving therapy services. Respondent then sought therapy at Lantern Therapy Services but discontinued attending those sessions due to incompatibility with her new therapist. Respondent never reengaged in counseling after that.

¶ 13       The hearing was continued again to September 7, 2022. At the beginning of the hearing, the circuit court found respondent unfit as to counts I, III, and IV. Specifically, the court found "[t]he most problematic issue ha[d] been substance abuse." The court further found

respondent had not satisfactorily addressed her mental health issues, emphasizing she was discharged from counseling and failed to reengage in those services after her relapse.

¶ 14                                    C. Best Interest Hearing

¶ 15            Immediately after the circuit court's unfitness decision, the case proceeded to the best interest portion of the hearing. At that time, the following colloquy ensued:

> "[ASSISTANT STATE'S ATTORNEY HOFFMAN]: Your Honor, at this time the State's only evidence would be the report that was filed by the caseworker that goes over all of the best interest factors.
>
> THE COURT: That's what I'm looking at right now here on my computer. So you're not calling a testimonial witness; right?
>
> MS. HOFFMAN: No, your Honor."

However, the State did not proffer the aforementioned best interest report, the court did not state it was taking notice of it, and it was never admitted into evidence.

¶ 16            The record shows the report was filed with the court August 24, 2022, and was prepared by Amanda Paul and Chloe Howaniec from CHA. The authors of the report listed all of the statutory best interest factors and relayed their findings as to each factor. The authors noted D.W. had been in his foster parents' care since November 2018. His foster mother provided him with emotional support, physical safety, clothing, food, and shelter, and all of his medical needs were met. Respondent had not attended any of D.W.'s medical appointments since he had been in care and had not provided shelter, clothing, or other necessary items. D.W. participated in extracurricular activities, and his foster parents were supportive and encouraging. D.W. was bonded with his foster parents and appeared to be secure in his placement. D.W. relied on his foster mother when he needed support, and the authors opined that remaining in his foster

- 5 -

parents' care would be the least disruptive placement until D.W. could be adopted by his great aunt and uncle in Michigan. Although D.W. was attached to respondent and desired to continue his relationship with her, he often worried about her safety. Throughout the life of the case, D.W. had been "very vocal" about his desire to live with respondent. Before the summer break, D.W. had been enjoying school and had several friends. D.W. attended summer camp and also enjoyed science, swimming, and boy scouts. The authors emphasized D.W.'s need for permanency and stability and opined that termination of respondent's parental rights was in his best interest. Respondent had not completed all of the recommended services and had not successfully addressed the reasons that brought D.W. into care.

¶ 17        Respondent testified on her own behalf. During her visits with D.W., she always brought a backpack with books and toys for him to play with. She additionally brought snacks and a meal. Respondent then introduced exhibit Nos. 2 through 8, which contained photographs of her and D.W. from their visits and were admitted without objection. Respondent testified D.W. often asked during visits when he would be able to return home. On cross-examination, respondent admitted that although she at one point had unsupervised visits with D.W., visits were moved back to the agency in August 2021 after she relapsed. Eugene W. also testified on his own behalf and noted that during visits, D.W. expressed how he wished to return home and did not want to stay at his foster home.

¶ 18        The circuit court then found it was in D.W.'s best interest that respondent's and Eugene W.'s parental rights be terminated. Specifically, the court emphasized D.W. had been in foster care for almost four years. Referencing the best interest report, the court noted D.W. desired to return home, but ultimately, "[t]hree years and nine months ha[d] failed to correct the conditions that led to the removal of [D.W.] ." The court found D.W. was secure in his current

placement and was bonded with his foster parents. The foster parents remained committed to D.W.'s continued relationship with his biological parents and other family members. Despite the fact "every opportunity ha[d] been exercised to find fitness and reunification," they had not succeeded, and D.W. deserved permanency.

¶ 19        This appeal followed.

¶ 20                              II. ANALYSIS

¶ 21        On appeal, respondent challenges only the circuit court's finding it was in D.W.'s best interest that her parental rights be terminated. Specifically, respondent argues the State, by failing to admit the best interest report into evidence, failed to present any evidence it was in D.W.'s best interest that respondent's parental rights be terminated. Alternatively, respondent argues, even if the court properly considered the best interest report, the State nonetheless failed to show termination was in D.W.'s best interest by a preponderance of the evidence.

¶ 22        The State argues respondent forfeited any claim of error regarding the best interest report by failing to object at the hearing. Alternatively, the State argues that even assuming the circuit court's consideration of the best interest report constituted error, it did not rise to the level of denying respondent a fair hearing or undermining the judicial process because had any objection been made, the report would have nonetheless been admitted into evidence.

¶ 23        We conclude (1) respondent forfeited her claim, (2) the circuit court's consideration of the best interest report was not plain error, and (3) the circuit court's finding that termination of respondent's parental rights was in D.W.'s best interest was not against the manifest weight of the evidence. Accordingly, we affirm the circuit court's judgment.

¶ 24                        A. Termination Proceedings Generally

¶ 25      Termination of parental rights under the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2020)) is a two-step process. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 1. The State first must establish by clear and convincing evidence one ground of parental unfitness from those listed in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). 705 ILCS 405/2-29(2) (West 2020); *In re B.B.*, 386 Ill. App. 3d 686, 698 (2008). If the circuit court finds a parent unfit, the court must conduct a second hearing to determine, by a preponderance of the evidence, whether it is in the best interest of the minor to terminate parental rights. *B.B.*, 386 Ill. App. 3d at 698. A reviewing court will not disturb a circuit court's decision at a termination hearing unless it is against the manifest weight of the evidence. *Julian K.*, 2012 IL App (1st) 112841, ¶ 65. A trial court's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, and not based on evidence. *B.B.*, 386 Ill. App. 3d at 697-98.

¶ 26      Proceedings to terminate parental rights are considered to be civil in nature, and generally, the rules of civil practice apply. *In re P.S.*, 2021 IL App (5th) 210027, ¶ 73; see also 750 ILCS 50/20 (West 2020) ("The provisions of the Civil Practice Law and all existing and future amendments of that Law and the Supreme Court Rules now or hereafter adopted in relation to that Law shall apply to all adoption proceedings except as otherwise specifically provided in this Act."). However, termination proceedings "do not fit into the classic scheme of civil litigation between two parties." *In re J.M.*, 245 Ill. App. 3d 909, 919 (1993). This is because dependency and neglect proceedings are considered "nonadversarial." *In re M.D.H.*, 297 Ill. App. 3d 181, 186-87 (1998); see also *In re Brooks*, 63 Ill. App. 3d 328, 340 (1978) ("Similarly, a child-neglect case is a nonadversary proceeding and the primary concern is the best interests and welfare of the child.").

¶ 27         Unlike the fitness portion of termination proceedings, where "[t]he standard of proof and the rules of evidence in the nature of civil proceedings *** are applicable" (705 ILCS 405/2-18 (West 2020)), at the best-interest stage, "the formal rules of evidence do not apply." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1070 (2009). This court has held that the best interest hearing under the Adoption Act is akin to the dispositional hearing under the Juvenile Court Act, and therefore subject to "the same relaxed standard regarding the admission of evidence." *Jay. H.*, 395 Ill. App. 3d at 1070. Under this "relaxed" standard, "[a]ll evidence helpful in determining [the best interest of the child], including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." 705 ILCS 405/2-22(1) (West 2020). The circuit court may also consider "all reports, whether or not the author testifies, which would assist the court in determining the proper disposition for the minor." *In re L.M.*, 189 Ill. App. 3d 392, 400 (1989). Moreover, "it is well established that a court may properly consider matters of record in its own proceedings." *In re M.D.*, 2022 IL App (4th) 210288, ¶ 80.

¶ 28                              B. Forfeiture

¶ 29         We first address the State's argument respondent forfeited any argument the circuit court erroneously considered the best interest report when she failed to raise a contemporaneous objection or file a posttrial motion raising the issue. Respondent argues she did not forfeit this issue because those requirements are not necessary in civil cases tried before a judge rather than a jury. We agree with the State.

¶ 30         Generally, an issue that was not objected to during trial and raised in a posttrial motion is forfeited on appeal. *In re Tamesha T.*, 2014 IL App (1st) 132986, ¶ 26; see also *In re William H.*, 407 Ill. App. 3d 858, 869-70 (2011) ("It is well established that, to preserve an

alleged error for appellate review, a party must, even in child custody cases, object at trial and file a written posttrial motion addressing it."). Respondent's argument that these requirements do not apply in civil proceedings tried before a judge is not well-taken given the ample precedent holding the rules of forfeiture apply equally in termination proceedings.

¶ 31 Here, respondent forfeited this claim for review because she never objected to the State's references to the best interest report during arguments or to the trial court's consideration of the report in announcing its decision. Respondent claims she has no "affirmative duty to point out to an opposing party any defects in its presentation of evidence." However, it was, in fact, incumbent upon respondent to object to the court's consideration of the best interest report if—as she now asserts on appeal—she believed such consideration to be erroneous. Respondent is, in essence, arguing the circuit court was not permitted to consider evidence that was not admitted at the hearing while simultaneously denying she had any responsibility to contemporaneously challenge that consideration. Although respondent is correct that either the State or the court, *sua sponte*, could have moved to reopen the proofs at any time and the State bore the burden of proof in these proceedings, these facts did not relieve respondent of her duty to raise her contention of error in a timely manner to preserve it for review. Accordingly, we find respondent's claim is forfeited.

¶ 32 C. Plain Error

¶ 33 Alternatively, respondent asks this court to review this issue under the plain-error doctrine. The State argues respondent's claim did not rise to the level of plain error. We conclude no plain error occurred.

¶ 34 Because termination of parental rights affects a fundamental liberty interest, a court may consider whether a forfeited issue constituted plain error. *In re L.B.*, 2015 IL App (3d)

150023, ¶ 11; see also Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). The plain-error doctrine " 'is applied in civil cases only where the act complained of was a prejudicial error so egregious that it deprived the complaining party of a fair trial and substantially impaired the integrity of the judicial process.' " *In re Marriage of Saheb*, 377 Ill. App. 3d 615, 627 (2007) (quoting *Lange v. Freund*, 367 Ill. App. 3d 641, 649 (2006)).

¶ 35        Here, even assuming the circuit court's consideration of the best interest report was erroneous, we conclude no plain error occurred because it did not deprive respondent of a fair hearing or substantially impair the integrity of the judicial process. The record shows the best interest report was filed with the court on August 24, 2022—weeks before the September 7, 2022, best interest hearing—and respondent does not assert she was unaware of the report or its contents at the time of the hearing. Additionally, the circuit court clearly found the report was admissible. The court repeatedly referred to the report in announcing its decision as if it had been admitted into evidence—meaning it found it to be helpful in determining D.W.'s best interest. See 705 ILCS 405/2-22(1) (West 2020). Although the court did not formally take notice of the report, the judge's statement that he was presently viewing the report on the computer showed an intention to consider the report as evidence. Thus, any objection to the court's admission of the report, had it been proffered, would have been futile.

¶ 36        Moreover, had the error regarding the State's failure to proffer the report been raised in the circuit court, the court would have easily cured the defect by reopening the proofs and either (1) taking notice, *sua sponte*, of the report as a matter of record or (2) allowing the State to make a formal proffer. See *In re Al. P.*, 2017 IL App (4th) 170435, ¶¶ 47-48 (noting the court has discretion to allow a party to reopen the proofs or may take such action on its own

motion); see also *M.D.*, 2022 IL App (4th) 210288, ¶ 80 ("[I]t is well established that a court may properly consider matters of record in its own proceedings."). We find nothing fundamentally unfair about the court's consideration of the best interest report, and we therefore conclude no plain error occurred.

¶ 37    We note separately that although the rules of evidence are "relaxed" at the best interest stage of proceedings, the State is not free to dispense with all typical procedures regarding the offering and presentation of evidence. *Jay. H.*, 395 Ill. App. 3d at 1070. In all instances, but most especially in matters involving the potential deprivation of a parent's fundamental right to raise her children, the State should take care to adhere to such procedures to avoid these matters coming before this court on appeal.

¶ 38                    D. Best Interest Determination

¶ 39    Finally, respondent argues, even if the circuit court's consideration of the best interest report was proper, the determination that termination of her parental rights was in D.W.'s best interest was against the manifest weight of the evidence. The State disagrees.

¶ 40    Once a parent is found unfit, the focus shifts to the child, and the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The Juvenile Court Act sets forth the factors to be considered whenever a best interest determination is required: "(a) the physical safety and welfare of the child, including, food, shelter, health, and clothing"; "(b) the development of the child's identity"; "(c) the child's background and ties, including familial, cultural, and religious"; "(d) the child's sense of attachments"; "(e) the child's wishes and long-term goals"; "(f) the child's community ties, including church, school, and friends"; "(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with

- 12 -

parent figures and with siblings and other relatives"; "(h) the uniqueness of every family and child"; "(i) the risks attendant to entering and being in substitute care"; and "(j) the preferences of the persons available to care for the child." 705 ILCS 405/1-3(4.05) (West 2020).

¶ 41    Here, the circuit court's determination it was in D.W.'s best interest that respondent's parental rights be terminated was not against the manifest weight of the evidence. The best interest report showed that D.W. felt secure in his current placement and that all of his emotional, physical, and medical needs were being met. D.W. was bonded with his foster parents, who could provide stability for D.W. until he could be adopted by relatives in Michigan. The foster parents and potential adoptive parents were willing to maintain D.W.'s relationship with respondent. D.W. was involved in extracurricular activities and was excited about attending school. Although D.W. was very vocal about his desire to return home to respondent, he also worried for his mother's safety. While respondent had made some strides in correcting her substance abuse and mental health issues, she had relapsed with alcohol approximately three years into the life of this case. When she was recommended for additional treatment following the relapse, respondent did not heed that recommendation and failed to reengage with therapy after being discharged from KP Counseling. The court noted that "[t]hree years and nine months ha[d] failed to correct the conditions that led to the removal of [D.W.].," and while "every opportunity ha[d] been exercised to find fitness and reunification," they had not succeeded. After almost four years in care, D.W. deserved permanency and stability. Based on this record, we conclude the court's determination that termination of respondent's rights was in D.W.'s best interest was not against the manifest weight of the evidence.

¶ 42                                III. CONCLUSION

¶ 43    For the reasons stated, we affirm the circuit court's judgment.

- 13 -

¶ 44          Affirmed.